**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ruth ZICREE, Harold Kaufman and Fredesvinda Mercedes Gonzalez, Defendants-Appellants.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Harold KAUFMAN and Ruth Zicree, Defendants-Appellants.**

Nos. 78–5613, 79–1875.

United States Court of Appeals, Fifth Circuit.

Nov. 8, 1979.

Rehearings Denied Jan. 11, 1979 in No. 78–5613.

---

**8.** Any evidence concerning double jeopardy problems can be introduced at a new state court trial.

Michael J. Osman, Miami, Fla., for Zicree & Kaufman.

Angus M. Stephens, Jr., Coral Gables, Fla., for Gonzalez.

Marsha L. Lyons, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee in case no. 78–5613.

Robert M. Duboff, Michael J. Osman, Miami, Fla., for defendants-appellants in case no. 79–1875.

Jack V. Eskenazi, U. S. Atty., Miami, Fla., for plaintiff-appellee in case no. 79–1875.

Joel N. Rosenthal, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee in both cases.

Before THORNBERRY, CLARK and KRAVITCH, Circuit Judges.

THORNBERRY, Circuit Judge:

In this consolidated appeal from multiple convictions for mail fraud, we must decide whether the evidence adduced at trial is sufficient to support the convictions, whether the appellants were improperly joined together in one trial, whether the trial judge erred in denying appellants' motion for a new trial on the basis of newly discovered evidence, whether the trial judge erred in presenting a particular *Allen* charge, and whether the trial judge erred in allowing an expert witness to testify for the government. Because we believe that the trial judge ruled correctly on each of these issues, we affirm the convictions in the court below.

I.

The government brought mail fraud and conspiracy charges against eleven participants in an alleged scheme to inflate medical bills for personal injury plaintiffs in the Miami area. The alleged participants included the appellants—Dr. Kaufman, his assistant, Ruth Zicree, and his former associate, Dr. Gonzalez—plus attorney Anthony Capodilupo and seven of Capodilupo's employees.

The scheme allegedly began in January, 1972, when Florida's no-fault insurance statute [1] took effect. The statute required automobile accident victims to accumulate over $1,000 in medical expenses before they could sue for pain and suffering. The government alleged that Capodilupo employed several "runners" who contacted accident victims and offered to help the victims make money from the accident. The runners referred these victims to Capodilu-

---

1. Fla.Gen.Stat.Ann. §§ 627.730–.741 (West 1972).

po, who would explain how the victims needed to run up their medical bills above the $1,000 threshold in the no-fault statute. Capodilupo then referred the victims to doctors such as Kaufman and Gonzalez. These doctors allegedly gave the victims unnecessary treatments and billed the victims for these treatments plus other treatments and services that the doctors never actually performed. After the victims' bills exceeded the $1,000 statutory threshold, Capodilupo would bring suit on behalf of the victims against the other drivers' insurance carriers for pain and suffering. Most of the suits were settled for a few thousand dollars.

The indictment covered alleged acts over the period from January, 1972, to November, 1977. Throughout this period Ruth Zicree worked as Dr. Kaufman's secretary; she helped prepare medical reports and bills among other jobs. Dr. Gonzalez worked with Dr. Kaufman in his office from January, 1973, until January, 1974. In 1974, Dr. Gonzalez opened her own office a few blocks down the street from Dr. Kaufman's office, and continued her medical practice throughout the period covered in the indictment.

The government brought one count of conspiracy and 188 counts of mail fraud relating to thirty-three different accident victims against the eleven defendants. At the conclusion of the government's case at trial, appellants moved for a severance and for acquittal. The judge granted a severance of the eight-person "lawyer group" from the appellants, and denied the motion for acquittal. Before submitting the case to the jury the judge dismissed twenty-eight counts of mail fraud relating to eight patients against the appellants. The jury returned guilty verdicts against Kaufman and Zicree on eight mail fraud counts relating to two patients, and against Gonzalez on eighteen mail fraud counts relating to four patients. The jury acquitted all appellants of the conspiracy charges.

Kaufman received a sentence of three years on one count to run consecutively with concurrent three-year sentences on the other counts. He was fined $1,000 for each count. Zicree received a sentence of one year on each count, all sentences to run concurrently. Zicree's sentence was modified to require one day's imprisonment, plus probation for the remainder of her concurrent sentences. She was fined $300 for each count. Gonzalez received a sentence of three years on each count, all sentences to run concurrently. She was fined $500 for each count.

## II.

■ Appellants contend that the evidence adduced at trial is insufficient to support their mail fraud convictions. Under the mail fraud statute, 18 U.S.C. § 1341,[2] the government must prove beyond a reasonable doubt (1) a scheme to defraud, and (2) causing a mailing for the purpose of executing the scheme. *United States v. Shryock,* 537 F.2d 207, 209 (5 Cir. 1976), *cert. denied,* 429 U.S. 1100, 97 S.Ct. 1123, 51 L.Ed.2d 549 (1977). In evaluating the sufficiency of the evidence, we must consider the evidence in the light most favorable to

---

2. § 1341. Frauds and swindles

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

the government. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The test for sufficiency of the evidence necessary to support denial of a motion for acquittal is whether the jury might reasonably conclude that the evidence is inconsistent with the hypothesis of the defendant's innocence. *United States v. Lonsdale,* 577 F.2d 923, 925 (5 Cir. 1978).

Appellants contend that our decision in *United States v. Herberman,* 583 F.2d 222 (5 Cir. 1978), requires a reversal of their convictions. In *Herberman* a jury convicted a doctor on twenty of twenty-eight counts for making false Medicare statements requesting payment for services he allegedly did not perform. On appeal we reversed four of the twenty convictions because the evidence was insufficient to establish guilt. These four counts related to four different patients. Three of the patients testified at trial that the treatments they received were actually consistent with the doctor's Medicare statements. The fourth patient testified repeatedly that he did not know whether or not he had received a treatment that the government contended had never been given. Because the testimony by these patients failed to indicate that the doctor's statements about these particular patients were false, and because the government produced no other testimony specifically relating to these four charges, we held that general evidence about the doctor's practices would be insufficient by itself to establish that he made false statements with particular regard to these four patients:

> The government's proof depended primarily on the testimony of the patients of Dr. Herberman and the testimony of the patients on these four counts was clearly insufficient. The general testimony of the investigators, the people from HEW and the ex-employees was not tied to any particular count. Without the patients' testimony, there was no case.

583 F.2d at 231.

█ We agree with appellants that the *Herberman* decision should guide our analy-

sis in this case, but we find that the evidence adduced by the government at trial satisfies the requirements in *Herberman.* As in *Herberman,* the government provided ample background evidence to establish that a fraudulent scheme existed. Witness Patricia Hope worked as a secretary in Kaufman's office for eight or nine months from mid-1972 until the beginning of 1973. She testified that Kaufman instructed her to record treatments for patients who did not actually receive them. According to Hope, many patients signed the office register, then left the office without seeing a doctor or receiving treatment. In January, 1974, Hope began secretarial work for Gonzalez. She testified that Gonzalez instructed her to follow Kaufman's practice of recording treatments that had not been performed. Another of Gonzalez's employees, Wendy Jones, confirmed Hope's testimony and added other examples of fraudulent billing by Gonzalez. Kaufman himself testified that he was aware of the $1,000 no-fault threshold, and that he kept special records for patients referred to him as automobile accident victims by attorneys such as Capodilupo.

Against this background of general evidence indicating the existence of a mail fraud scheme, the government presented specific testimony from each of the patients related to the counts upon which the appellants were convicted. Kaufman and Zicree were convicted upon counts relating to patients Lacey and Raiford. Lacey testified that he made only six visits to Kaufman's office, although the government produced mailings to show that Kaufman had billed Lacey for sixteen visits. Raiford testified that he made no more than six visits to Kaufman's office, although Kaufman billed him for twenty-eight visits. Gonzalez was convicted on the count relating to Lacey, a patient at Kaufman's office during the period that Gonzalez worked with Kaufman, as well as on counts relating to Durden, Patricia Hope, and Rickford Hope, who were Gonzalez's patients after she opened her separate office. Durden testified that she

made only two visits to Gonzalez's office, although Gonzalez billed her for fifteen visits. Patricia Hope, who worked as Gonzalez's secretary, testified that she made ten to fifteen visits to Gonzalez as a patient, although Gonzalez billed her for forty-nine visits. Rickford Hope testified that he made about thirty-one visits to Gonzalez; but Gonzalez billed him for fifty-seven visits. In contrast to the testimony of the four patients examined in *Herberman,* the testimony of the patients related to convictions in this case shows that the number of treatments that they received is inconsistent with the number of treatments for which they were billed. This testimony satisfies the requirements in *Herberman* for specific evidence about each count relating to a conviction.

Although the evidence strongly establishes Gonzalez's guilt with regard to Durden, Patricia Hope and Rickford Hope, all of whom Gonzalez treated after she opened her own separate office, the evidence establishing Gonzalez's guilt with regard to Lacey, a patient at Kaufman's office while Gonzalez worked with Kaufman, is less strong because Lacey did not testify that he was treated by Gonzalez. Lacey testified that he visited Kaufman's office about six times over a period of three months beginning in January, 1973. Throughout this period Gonzalez worked full time with Kaufman in the office. Patricia Hope's testimony indicates that Gonzalez participated in the mail fraud scheme during the period that she worked for Kaufman because Gonzalez used the same fraudulent techniques as Kaufman when Gonzalez opened her own office a year later. For example, Hope testified that Kaufman told her to enter the mark "physio" on patients' records whether or not they received this or any other treatment, and that Gonzalez gave identical instructions when Hope began work in her office a year later. Hope testified that in both offices patients often signed the register and left without receiving treatment. Viewed in the light most favorable to the government as required by

*Glasser,* this evidence is sufficient to establish Gonzalez's participation in a scheme relating to inflated records and bills for the patient Lacey during the period that Gonzalez worked with Kaufman in his office.

Zicree specially contends that the evidence relating to her role as a secretary is insufficient to establish her guilt in the scheme. Evidentiary exhibits show, however, that Zicree signed or initialed medical reports and bills concerning both Lacey and Raiford. Patricia Hope and Zicree herself testified that Zicree prepared the reports and bills for Kaufman's office.

We also find that the evidence showing each appellant's participation in the scheme is sufficient to show that they knowingly intended to further the scheme through their acts. *See, e. g., United States v. Perez,* 489 F.2d 51, 73 (5 Cir. 1973), *cert. denied,* 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974) (repeated actions of participants in scheme sufficient to show intent and to preclude finding of mistake or naivete). None of the appellants contests use of the mails to further the scheme.

### III.

At the beginning of the trial the three appellants were tried jointly with Attorney Capodilupo and his seven employees. At the close of the government's case, the judge granted appellants' motion to sever the "lawyer group" from appellants. The judge denied appellants' motion to sever Gonzalez from the trial of Kaufman and Zicree. All appellants now contend that they were improperly joined together for trial, and that the trial judge erred in denying their motion to sever Gonzalez from the trial of Kaufman and Zicree.

A claim of misjoinder is reviewable on appeal as a matter of law. *United States v. Park,* 531 F.2d 754, 760 (5 Cir. 1976). Joinder of defendants requires a balancing of the right of the accused to a fair trial and the public's interest in the efficacious administration of justice. *Unit-*

ed States v. Gentile, 495 F.2d 626, 630 (5 Cir. 1974). This balancing is governed by Fed.R.Crim.P. 8(b), which provides that

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

 In deciding whether to allow joinder of defendants under Rule 8(b), the judge must accept as true the factual allegations of the indictments. *United States v. Levine*, 546 F.2d 658, 663 (5 Cir. 1977). The indictment in this case appears to satisfy Rule 8(b) because it alleges that all defendants participated in the same series of acts or transactions constituting the offense of mail fraud and conspiracy to commit mail fraud. For example, the last count in the indictment alleges a single conspiracy between the lawyer group and all three appellants to inflate medical bills for the purpose of satisfying the $1,000 no-fault threshold for automobile accident litigation. Each count alleges participation by all eleven defendants in the mail fraud scheme. The indictment specifically alleges that Gonzalez worked together in the same office with Kaufman and Zicree during one period of the scheme.

Even though the allegations in the indictment indicate that joinder of Gonzalez with Kaufman and Zicree was proper, appellants contend that the *Levine* case still requires us to reverse their convictions on grounds of misjoinder. After recognizing in *Levine* that the factual allegations in the indictment should be accepted as true for purposes of deciding joinder, we also stated that

Where, however, the defendant can show that the charge of a joinder of defendants in conspiratorial action is based on a legal interpretation that is improper, the court cannot base its 8(b) ruling on the written words alone but must determine if, under correct legal theory, joint action was actually involved.

546 F.2d at 663. In *Levine* the government alleged a single conspiracy among several defendants when the indictment itself showed that two separate and independent conspiracies actually existed. Because the "only real underpinning for the government's conspiracy count was the false legal premise that proof of proximate or simultaneous conspiracies with one common conspirator was sufficient to establish the existence of a single conspiracy," we reversed one appellant's conviction because he was improperly joined with the other defendants. 546 F.2d at 665.

In *Levine* defendant Abrams contracted with a filmmaker, Harvard, to make an obscene film promoting the career of a particular female dancer. During the same period of time defendant Levine contracted separately with Harvard to produce a series of sixteen obscene films. The government alleged no facts to show that Abrams and Levine had any interaction with each other, or were even cognizant of each other's activity.[3] Neither defendant had any financial or other interest in the other's films. The government attempted to show that Abrams and Levine participated in a single "wheel" conspiracy based on the fact that Harvard used some of the same actors and studios for the separate films of Abrams and of Levine. We rejected the government's argument:

> For a wheel conspiracy to exist those people who form the wheel's spokes must have been aware of each other and must do something in furtherance of some single, illegal enterprise. . . . If there

---

**3.** Of the twenty counts in the indictment, only one count alleged specific joint action by Abrams, Levine, and Harvard. We concluded that Levine's name must have been added by mistake in that count, and that, in the alternative, such an allegation in only one count out of twenty would be insufficient to show a single conspiracy. 546 F.2d at 665.

is not some interaction between those conspirators who form the spokes of the wheel as to at least one common illegal object, the "wheel" is incomplete, and two conspiracies rather than one are charged.

546 F.2d at 663.

Appellants' attempt to show that the government's indictment in this case rests upon a similar, false legal premise involving multiple conspiracies is not persuasive. Unlike Abrams and Levine, who were strangers to each other throughout the time period in issue, Kaufman and Gonzalez worked with each other in the same office for one year covered in the indictment. In addition to this interaction, other evidence indicates the existence of a common scheme between Kaufman and Gonzalez. When Gonzalez left Kaufman's office, she opened her own office a few blocks down the street. Gonzalez employed Patricia Hope, a former secretary for Kaufman. Throughout the period covered in the indictment Gonzalez received patients referred by the lawyer Capodilupo, who also continued to refer other patients to Kaufman's office. The government alleged, and Hope later testified, that Gonzalez used the same methods to inflate medical bills in her office as Kaufman had used in his office. These facts showing interaction between Kaufman and Gonzalez, and a common method to defraud, suggest that Kaufman, his assistant Zicree, and Gonzalez were involved in the same series of acts or transactions constituting an offense or offenses, as required for proper joinder under Rule 8(b). The government has shown a "substantial identity of facts or participants" between the offenses to make joinder proper according to our decision in *United States v. Marionneaux*, 514 F.2d 1244, 1248–49 (5 Cir. 1975).

The facts in this case do not resemble the one-time commercial transactions charged in *Levine*, in which the only link between two customers for obscene films was each one's independent relation to a common filmmaker. This case more closely resembles the ongoing mail fraud scheme in *United States v. Perez*, 489 F.2d 51 (5 Cir. 1973), cert. denied, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974). In *Perez* the government alleged that twenty-one defendants participated in a scheme to stage fake automobile accidents for the purpose of collecting insurance proceeds. Except for a core group of three organizers, only a few of the other defendants participated in more than one of the staged accidents. Despite this fact, we found that all participants must have intended to serve the same common objective and must have been aware of a larger scheme. 489 F.2d at 57–64. For this reason, we held that joinder was proper for all participants in the ongoing scheme. 489 F.2d at 64–65.

■ Having found that Kaufman, Zicree, and Gonzalez were properly joined together at the beginning of the trial, we must now decide whether the trial judge erred in denying appellants' motion for a severance of Gonzalez from the trial of Kaufman and Zicree at the close of the government's case. The judge's decision whether to grant a severance is governed by Fed.R.Crim.P. 14, which provides:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

As for joinder, the judge considering a motion for severance must balance the right of a defendant to a fair trial against the interests of judicial economy. This balancing process is within the discretion of the trial judge, and an appellate court will not reverse the judge's decision without an affirmative showing that the lower court abused its discretion. *United States v. McLaurin*, 557 F.2d 1064, 1075 (5 Cir. 1977), cert. denied, 434 U.S. 1020, 98 S.Ct. 743, 54 L.Ed.2d 767 (1978).

■ In order to obtain severance under Rule 14, the defendants have the difficult

burden of proving that they will suffer the most compelling prejudice from continued joinder; a mere showing of some prejudice is insufficient. *Perez*, 489 F.2d at 65. The test for such prejudice is

> [W]hether under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct. In sum, can the jury keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him? If so, though the task be difficult, severance should not be granted.

\*　　\*　　\*　　\*　　\*　　\*

In determining on appeal whether the jury was in fact confused, the court will look to the verdict. Convictions will invariably be sustained if it may be inferred from the verdict that the jury "meticulously sifted the evidence," as where it acquits on certain counts.

*United States v. Wasson*, 568 F.2d 1214, 1222 (5 Cir. 1978), *quoting Tillman v. United States*, 406 F.2d 930, 935–36 (5 Cir.), *vacated in part on other grounds*, 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969).

▮ Kaufman and Zicree contend that they were prejudiced because the jury might have considered testimony about Gonzalez when they decided to convict Kaufman and Zicree. The record does not indicate, however, that the jury was confused about the testimony. All of the witnesses clearly identified whether their testimony related to Gonzalez, or to Kaufman and Zicree. Moreover, the judge carefully instructed the jury to consider specific testimony relating to only one defendant, such as Patricia Hope's testimony about activities in Gonzalez's office, only against that defendant, and not against the others. The verdict shows that the jury actually sifted the evidence in reaching their decision on the various counts. Out of 189 counts, the jury convicted Kaufman and Zicree on only eight counts and convicted Gonzalez on only eighteen. The jury appeared to understand the restrictive instructions about the evidence because they convicted Kaufman and Zicree only on counts relating to patients at Kaufman's office, and they convicted Gonzalez only on counts relating to patients at Gonzalez's office, with the exception of the patient Lacey. Gonzalez worked together with Kaufman while Lacey was a patient in Kaufman's office, however, and the evidence sufficiently shows that Gonzalez participated with Kaufman in the mail fraud scheme during this period. For these reasons, we hold that the trial judge did not abuse his discretion when he denied appellants' motion to sever Gonzalez from the trial of Kaufman and Zicree.

## IV.

In appeal number 79–1875 appellants Kaufman and Zicree contend that the trial judge erred when he denied their motion for a new trial on the basis of newly discovered evidence. The evidence newly discovered by appellants is the grand jury testimony of Dr. Gaston Maya, who worked in Kaufman's office for two and a half years beginning in the middle of 1974. Appellants claim that the testimony is strongly exculpatory because Maya generally denies seeing any wrongdoing in Kaufman's office. Although the government included Maya's testimony on a 274-item discovery list presented to appellants five and a half months before the trial, appellants contend that they did not read Maya's testimony because they assumed it would be hostile, and because the government did not alert them to its exculpatory nature. Maya asserted his fifth amendment right against self-incrimination and did not testify at the trial.

▮ The test for consideration of a motion for new trial on the grounds of newly discovered evidence can be summarized as follows:

. . . The evidence must be discovered following trial; there must have been diligence on the part of the movant to discover the new evidence; the evidence is not merely cumulative or impeaching; the evidence is material; and a new trial would probably produce a new result.

*United States v. Prior*, 546 F.2d 1254, 1258 (5 Cir. 1977). We hold that the trial judge correctly denied appellants' motion for at least two reasons: Maya's testimony would probably not have produced a different result, and appellants did not exercise diligence in discovering the evidence.

Although Maya generally denied seeing or participating in any wrongdoing while he worked in Kaufman's office, Maya admitted several facts that undercut the exculpatory nature of his testimony. He conceded that records for accident victims were treated separately in the office, and that ninety percent of these patients were hospitalized. Even with regard to the patients that Maya treated in the office, Maya testified that he never filled out accident reports, and that Kaufman or a secretary filled out all the records. Maya also testified that Kaufman almost always made the decision whether to hospitalize a patient. None of Maya's testimony specifically contradicted the firsthand account of any of the government witnesses who testified at trial. For these reasons, Maya's grand jury testimony would probably not have produced a different result at trial.

The second justification for upholding the judge's denial of a new trial involves the lack of diligence by appellants. During the five and a half months before trial appellants had ample opportunity to read Maya's testimony presented to them on the government's discovery list. Even though the list contained 274 items, these primarily involved specific mailings and records except for the last seven items, which were clearly marked as grand jury testimony. The government had no duty to alert appellants about the questionably exculpatory nature

of Maya's testimony, especially when Maya was well known to Kaufman and Zicree as an employee in their own office for two and a half years.

## V.

Appellants' two remaining contentions involve the judge's use of a modified *Allen*[4] charge, and the judge's decision to qualify a witness as an expert. We find that neither of these contentions requires reversal on appeal.

■ After the jury had deliberated for about two and a half days, they reported that they had reached a verdict with regard to all appellants on some counts, but had reached no verdict on about half of the 189 counts. The judge gave the jury a modified *Allen* charge. Despite an express invitation by the judge, appellants' counsel did not object to the charge or propose curative instructions. We find that the charge was not unduly coercive. The judge did not set a time restraint for the jury, nor did he pressure the jurors in the minority to compromise. The judge remarked to the jury that a new trial would be expensive and exhausting to the litigants, but this observation was obvious to jurors who had already participated in the eight-week trial. We recently upheld an *Allen* charge that alluded to the expense of a retrial in *United States v. Dixon*, 593 F.2d 626, 630–31 (5 Cir. 1979). We find no error with the judge's *Allen* charge in the trial below.

■ Appellants contend that the judge erred in allowing witness McEachen to qualify as an expert and to give specific testimony about the appellants' patients. The government presented McEachen, a handwriting analyst with the Dade County Public Safety Department for a year and a half, to testify that some of the patients' signatures on the doctors' office registers had been forged. We find that the judge did not abuse his broad discretion in quali-

4. *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

fying McEachen as an expert or in admitting his testimony. *See United States v. Viglia*, 549 F.2d 335, 337 (5 Cir.), *cert. denied*, 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977). Although appellants showed a few discrepancies in McEachen's testimony on cross examination, these discrepancies were not significant enough to show that the judge erred in qualifying McEachen as an expert. The judge later ruled that McEachen's testimony about patients Lang and Freeman should be stricken from the record, but that McEachen's other testimony could remain in the record. We find that this ruling was correct.

## VI.

We find that the evidence is sufficient to convict appellants on all counts, and that the judge did not err when he joined the appellants together in the same trial, denied their motion for a new trial on grounds of newly discovered evidence, gave the modified *Allen* charge, or qualified the expert witness. For this reason, we affirm the appellants' convictions in the court below.

AFFIRMED.