UNITED STATES of America,
Plaintiff–Appellee,

v.

Raymond CASAMAYOR,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Carroll KEY, Carol Hardin, Janet Cates, Michael Cates, Raymond Casamayor, Russell Barker, John R. Roberts, Buford E. Clark, Michael Alan Clark, Aristides M. Brito, Miguel Brito–Williams, Antonio Diaz, Defendants–Appellants.

Nos. 85–5602, 85–5628.

United States Court of Appeals,
Eleventh Circuit.

Feb. 23, 1988.

Stanley Marcus, Leon B. Kellner, U.S. Attys., Michael P. Sullivan, Sonia O'Donnell, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Rick S. Cullen, Ft. Lauderdale, Fla., for Carroll Key & Miguel Brito–Williams.

Alvin E. Entin, Entin, Schwartz, Barbakoff & Schwartz, Miami, Fla., for Brito, Carol Hardin, Raymond Casamayor, M. Clark, B. Clark.

Nathan E. Eden, Feldman & Eden, Key West, Fla., Bennie Lazzara, Tampa, Fla., (ct. appt'd), for Russell Barker.

R.H. Bo Hitchcock, Hitchcock & Cunningham, P.A., John F. O'Donnell, O'Donnell & Lazarus, Fort Lauderdale, Fla., for A. Diaz.

Alan S. Ross, Weiner, Robbins, Tunkey & Ross, P.A., Miami, Fla., for J. Cates.

William R. Tunkey, Weiner, Robbins, Tunkey & Ross, P.A., Miami, Fla., for M. Cates.

Before RONEY, Chief Judge, VANCE, Circuit Judge, and PITTMAN *, Senior District Judge.

PER CURIAM:

This is a RICO case involving jury convictions of three members of the Key West Police Department, and nine co-defendants, who became co-conspirators by supplying cocaine and by protecting cocaine traffickers. On appeal, defendants raised issues concerning: (1) severance; (2) sufficiency of evidence; (3) the *Jencks* act; (4) evidentiary rulings; (5) jury instructions; (6) jury misconduct; (7) prosecutorial misconduct; and (8) ineffective assistance of counsel. Concluding there was no error in denying a severance, that sufficient evidence supports the convictions, and that the district court committed no reversible error, we affirm.

Entin, Schwartz, Barbakoff & Schwartz, Stephen A. LeClair, Miami, Fla., for defendant-appellant.

---

* Honorable Virgil Pittman, Senior U.S. District Judge for the Southern district of Alabama, sitting by designation.

The superseding indictment upon which defendants were convicted alleged varying degrees of involvement with the Key West Police Department (KWPD), the RICO "enterprise" for purposes of this case. *See* Racketeer Influenced and Corrupt Organizations, 18 U.S.C.A. § 1961(4). Specifically, the enterprise consisted of Key West Police officers, narcotics traffickers and a Key West attorney.

The defendants were convicted as follows:

A. Raymond Casamayor (the KWPD Chief-of-Detectives):

(1) Racketeering and conspiracy to commit racketeering, in violation of 18 U.S.C.A. §§ 1962(c), (d), 1963;

(2) Possession and conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C.A. §§ 841(a)(1), 846;

(3) Bribing a witness, in violation of 18 U.S.C.A. § 201(d); and

(4) Tax evasion and filing false tax returns, in violation of 26 U.S.C.A. §§ 7201, 7206(1).

B. Carroll Key (the KWPD Sergeant of Detectives) and Russell Barker (the KWPD Lieutenant of Detectives):

(1) Racketeering and conspiracy to commit racketeering, in violation of 18 U.S.C.A. §§ 1962(c), (d), 1963.

C. Carol Hardin (school bus driver and cocaine buyer/seller):

(1) Conspiracy to commit racketeering, in violation of 18 U.S.C.A. §§ 1962(d), 1963; and

(2) Conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C.A. § 846.

D. Michael Cates (attorney):

(1) Racketeering and conspiracy to commit racketeering, in violation of 18 U.S.C.A. §§ 1962(c), (d), 1963; and

(2) Conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C.A. § 846.

E. Janet Cates, Buford Clark, Antonio Diaz, John R. Roberts and Miguel Brito-Williams, a/k/a Mike Brito (cocaine traffickers):

(1) Racketeering and conspiracy to commit racketeering, in violation of 18 U.S.C.A. §§ 1962(c), (d), 1963; and

(2) Possession and conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C.A. §§ 841(a)(1), 846.

F. Michael Clark and Aristides M. Brito (cocaine traffickers):

(1) Racketeering and conspiracy to commit racketeering, in violation of 18 U.S.C.A. §§ 1962(c), (d), 1963;

(2) Possession and conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C.A. §§ 841(a)(1), 846; and

(3) Bribing a witness, in violation of 18 U.S.C.A. § 201(d).

## (1) *Severance*

The district court acted within its broad discretion in denying defendants' requests for severance of offenses and defendants under Rule 14 of the Federal Rules of Criminal Procedure. *See also* Fed.R.Crim. P. 8. Defendants have not demonstrated the specific and compelling prejudice which is necessary to warrant relief. *See United States v. Rivera,* 775 F.2d 1559, 1564 (11th Cir.1985), *cert. denied,* 475 U.S. 1051, 106 S.Ct. 1275, 89 L.Ed.2d 582 (1986); *United States v. Magdaniel–Mora,* 746 F.2d 715, 718 (11th Cir.1984).

The major argument of the defendants for severance involved the alleged prejudicial spillover effect from the joinder of co-defendant Casamayor's income tax counts with the RICO and narcotics charges. Approximately half of the evidence presented at the three and one-half month trial related to Casamayor's tax counts. The quantity of evidence, however, does not alone constitute specific and compelling prejudice. *See United States v. Walker,* 720 F.2d 1527, 1533–34 (11th Cir. 1983), *cert. denied,* 465 U.S. 1108, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984). The tax-related charges were included to show that Casamayor must have received bribes because his income and expenses far exceeded that which he earned in his employment with the Key West Police Department and other

legitimate sources. That Casamayor received bribes was an important part of the Government's case. A separate trial on Casamayor's tax counts would have resulted in extensive duplication of evidence. *See United States v. Zicree*, 605 F.2d 1381, 1386 (5th Cir.1979), *modified on other grounds*, 609 F.2d 826 (5th Cir.), *cert. denied*, 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980).

The district court's repeated admonitory instructions that the income tax evidence could only be used against defendant Casamayor enabled the jury to separate the evidence relevant to each defendant and render fair and impartial verdicts. *See Zicree*, 605 F.2d at 1389. As a practical matter, the jury appears to have meticulously sifted the evidence by acquitting two defendants and by acquitting certain defendants of several counts charged in the indictment.

■ Detective Russell Barker contends that he should have been granted a severance in order to introduce defendant Aristides M. Brito's testimony at a separate trial. On the eve of the trial, Detective Barker submitted co-defendant Brito's affidavit stating, *inter alia*, that Brito would testify at a separate trial that he neither conspired with Detective Barker nor paid any protection money to Barker. *See Byrd v. Wainwright*, 428 F.2d 1017 (5th Cir. 1970). The district court concluded, however, that this severance motion and accompanying affidavit were untimely and insufficient to warrant relief. *See United States v. Hewes*, 729 F.2d 1302, 1320 (11th Cir.1984), *cert. denied*, 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985). Such a decision is within the trial court's discretion. *United States v. Leichtman*, 742 F.2d 598, 605 (11th Cir.1984). In any event, the proffered testimony was cumulative of the testimony of Key and Barker that no bribes were paid to Barker.

Defendant John Roberts has not shown specific and compelling prejudice in the district court's refusal to sever his trial from that of co-defendants Barker and Brito. ■ Defendant Miguel Brito–Williams contends that he was entitled to a severance from co-defendant, Detective Carroll Key because Key, in pursuing his defense, informed the jury of law enforcement efforts against Brito–Williams. Antagonistic defenses satisfy the compelling prejudice standard if the defenses are irreconcilable and mutually exclusive. *United States v. Van Horn*, 789 F.2d 1492, 1505 (11th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 190, 93 L.Ed.2d 123 (1986). In this case, the defenses were consistent. Brito–Williams' defense that he never bribed Detective Key dovetailed with Key's defense that he never accepted protection money.

(2) *Sufficiency of Evidence*

Viewing the evidence adduced in this case and the inferences that may be drawn from it in the light most favorable to the Government, the Court concludes that it was sufficient to allow a reasonable trier of fact to find guilt beyond a reasonable doubt of the defendants who contest sufficiency: Michael Cates, Carroll Key, Buford Clark and Marion Russell Barker. *See United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (*in banc*), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). Because the sufficiency point is especially difficult in the appeal of a protracted, multiple defendant trial, and the time for oral argument for each defendant is so limited, we have studied carefully each brief and the relevant portions of the record. Although not overwhelming as to certain defendants, there was sufficient testimony to support the guilty verdicts, if believed by the jury. In making this determination, the Court is mindful that it is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt. *Id.*

(3) *The Jencks Act*

■ Casamayor argues that it was error not to declare a mistrial due to the Government's failure to timely produce, pursuant to the Jencks Act, 18 U.S.C.A. § 3500(b), a tape recording in their possession between Government witness Donald Faison and de-

fense witness George Carey immediately upon the completion of Faison's testimony.

On direct examination, Donald Faison testified for the Government that he paid monies to Casamayor through George Carey, an alleged "bag man" for Casamayor, to protect his operations in Key West. Cross-examination by defense counsel sought to show Casamayor's position that Faison's testimony was fabricated. The defense called Carey on direct examination to rebut Faison's testimony. Cross-examination of Carey by the Government included a recorded conversation between Faison and Carey which took place in April, 1983 in which Faison and Carey referred to Casamayor and Carey. The tape was not turned over to defense counsel until the time of Carey's testimony.

The trial court ruled that the material did not fall within the *Jencks* Act because Faison's direct testimony did not relate to anything on the tape. The Government did not elicit testimony from Faison on direct-examination regarding the conversation he had with Carey in April, 1983. Thus, the tape does not "relate to the subject matter" as to which Faison testified to on direct-examination. 18 U.S.C.A. § 3500(b).

Second,

[t]he purpose of the Jencks Act is to reinforce the credibility of the criminal justice process by requiring the prosecution to furnish the statements of any witness it calls *so that the defense can conduct its cross-examination in light of all facts known to the prosecutor and so that the defense is assured that the witness had made no secret contrary statements in the past.*

*United States v. Head,* 586 F.2d 508, 512 (5th Cir.1978) (emphasis added). *Accord United States v. Prieto,* 505 F.2d 8, 11 (5th Cir.1974) ("underlying purpose of *Jencks* Act ... is solely to enable the defense to impeach a Government witness by bringing variances [between testimony at trial and pre-trial statements] to the attention of the jury during cross-examination."). This purpose was not undermined here by the tardy production of the tape.

There was no obligation on the part of the Government to produce a non-exculpatory statement of a witness that the defense calls. The tape goes to show that Carey was untruthful either when it was recorded or during his testimony at defendant's trial. In that situation, it was proper for the Government to use it to impeach Carey.

Furthermore, having received the tape at the time of Carey's testimony, defendant could have recalled Faison to challenge him on the tape's contents, which, as indicated, is the primary purpose behind production. Thus, the failure to produce the tape until after Carey testified inconsistently with it did not prejudice defendant's ability to effectively cross-examine Faison.

### (4) *Evidentiary Rulings*

A careful review of the record and arguments concerning each point raised as to the district court's evidentiary and other trial rulings reveals no reversible error.

(a) The taped statements of some of the co-defendants, obtained with a body bug on a co-conspirator who began to cooperate with the Government, were admissible as statements made in furtherance of the conspiracy, even though some co-conspirators had been arrested. The district court correctly found that this was an ongoing conspiracy which did not end upon the arrest of some of the co-conspirators. *See United States v. Papia,* 560 F.2d 827, 835–37 (7th Cir.1977).

(b) It was not an improper limitation on Carol Hardin's attorney's closing argument to advise counsel that if he pointed out to the jury that the Government did not call a witness in its case-in-chief, the Government in its rebuttal could respond that the defense also could have called the witness. *United States v. Ivey,* 546 F.2d 139, *reh. denied,* 550 F.2d 243 (5th Cir.), *cert. denied,* 431 U.S. 943, 97 S.Ct. 2662, 53 L.Ed.2d 263 (1977).

(c) Defendant John Roberts has failed to show reversible error in the alleged inconsistent application of the Federal Rules of Evidence, primarily Rule 608(b). Defendant Raymond Casamayor has shown no

reversible error on the district court's admission of extrinsic evidence. In ruling on these questions, the law allows the district court broad discretion, and neither defendant has demonstrated any abuse of that discretion. *United States v. Banks,* 475 F.2d 1367, 1368 (5th Cir.1973); *United States v. Dinitz,* 538 F.2d 1214, 1224 (5th Cir.1976).

■ (d) Likewise, defendant Roberts has failed to show any abuse of discretion in the district court's limitation on the cross-examination of Government witnesses Hector Serrano and Herbert Reynolds. *See Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931). The discretion afforded the trial court is especially broad when it comes to controlling cross-examination for impeachment purposes. *United States v. Burke,* 738 F.2d 1225, 1227 (11th Cir.1984).

■ (e) There was no plain error in admitting, without objection, the guilty pleas of certain co-conspirators. It was clear through pre-trial motions that the defense counsel would examine these witnesses as to their plea bargains, as they did, so the Government's introducing that evidence did not affect the substantial rights of the defendants. *United States v. Cortez,* 757 F.2d 1204, 1207 (11th Cir.), *cert. denied,* 474 U.S. 945, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985).

(f) The Government correctly argues that the testimony of Gustavo Fernandez related to the charged offenses and was not admitted as prior act testimony under Fed.R.Evid. 404(b). *See United States v. Weeks,* 716 F.2d 830, 832 (11th Cir.1983). The testimony of Donald Faison about other similar crimes of Casamayor meets the tests set forth in *United States v. Beechum,* 582 F.2d 898 (5th Cir.1978) (*in banc*), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), for admission under Fed.R.Evid. 404(b), as does any statement made by the Government in its rebuttal closing argument regarding Diaz.

■ (g) Kathy Hybarger testified that she had received cocaine from and "did" cocaine with Casamayor. We need not here decide whether the Government is correct in arguing the admissibility of this testimony to rebut the testimony of Casamayor's witness that he was a law-abiding citizen, because the district court later struck the testimony and instructed the jury to disregard it. Under the circumstances, such an instruction was sufficient to cure the error, if any. *See United States v. Ruz–Salazar,* 764 F.2d 1433, 1437 (11th Cir.1985).

(h) There was no error in excluding from evidence a tape recording of a conversation between Serrano, the Government witness who cooperated with a body bug, and Marion Russell Barker, which Barker claims would have shown that Barker was not aware of the criminality which Serrano was trying to get him to discuss. The district court could properly determine after reviewing the taped conversation that there was nothing exculpatory in it and that it would have confused the jury. In any event, both Serrano and Barker testified as to the substance of what was in the tape, so that the district court was well within its discretion in excluding the evidence. *See United States v. Collins,* 779 F.2d 1520 (11th Cir.1986).

**(5)** *Jury Instructions*

■ The district court did not commit reversible error in refusing to give defendant Russell Barker's requested jury instruction in connection with the RICO conspiracy count. *See* 18 U.S.C.A. § 1962. The indictment alleged that Detective Barker committed two acts of bribery chargeable under state law. *See* Fla.State. § 838.015. The district court instructed the jury on the definition and elements of the Florida bribery statute. Defendant Barker, however, requested the district court to deliver an additional Florida Standard Jury Instruction setting out the specific elements involved in proving a violation of Fla.Stat. § 838.015 when the defendant is a public official accused of accepting a bribe, as distinguished from being a person charged with offering a bribe.

In construing the federal racketeering statutes, this Court has held:

[R]eferences to state law serve a definitional purpose, to identify generally the kind of activity made illegal by the federal statute.

*United States v. Watchmaker,* 761 F.2d 1459, 1469 (11th Cir.1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 880, 88 L.Ed.2d 917 (1986); *United States v. Salinas,* 564 F.2d 688, 690 (5th Cir.1977), *cert. denied,* 435 U.S. 951, 98 S.Ct. 1577, 55 L.Ed.2d 800 (1978). Thus, the district court's charge, which included a definition of Fla.Stat. § 838.015, accurately stated the applicable law. *See United States v. Sorrells,* 714 F.2d 1522, 1531–32 (11th Cir.1983). Having adequately charged on the law, the district court did not have to give other requested instructions.

#### (6) *Jury Misconduct*

##### A. *Jury Foreman Cabrera*

■ The district court acted within its discretion in denying a Motion For New Trial Based on Non–Disclosure of Material Juror Information challenging jury foreman Peter Cabrera. *See United States v. O'Neill,* 767 F.2d 780, 785 (11th Cir.1985). Juror Cabrera had been a trainee at the Key West Police Department for three and one-half months, approximately 23 years before trial, and had met defendant Russell Barker at that time. He did not reveal this fact on *voir dire.*

In *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), the Supreme Court established the required review:

> [T]o obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

*Id.* at 556, 104 S.Ct. at 850. The district court, in addition to holding the motion was untimely, found after a post-trial evidentiary hearing: *first,* that Cabrera did not deliberately withhold information during *voir dire* or in his juror questionnaire, but rather his nondisclosure was attributable to "inattentiveness;" and *second,* that in any event, Cabrera's short probationary tenure with the Key West Police Department 23 years prior to trial did not constitute actual bias to sustain a challenge for cause. The record supports these findings. The facts here clearly would not present a presumption of bias. *Cf. United States v. Perkins,* 748 F.2d 1519, 1532–33 (11th Cir.1984). Thus, the defendants have not met either prong of the *McDonough* standard.

##### B. *Jury Deliberation*

■ The district court committed no error concerning its handling of alleged improprieties during the jury deliberations. At the post-trial evidentiary hearing regarding foreperson Cabrera, defendants apprised the court that several jurors had sent the United States Magistrate letters which suggested "possible improprieties" during their deliberations. Specifically, defendants indicated that a juror had complained of juror Cabrera's "strong arm tactics." The district court noted that it would request a report from the Magistrate. The defendants did not follow-up on this matter. Defendants, therefore, have failed to adequately preserve this issue on appeal. *See e.g., Johnson v. Smith,* 696 F.2d 1334, 1338 (11th Cir.1983). In any event, the alleged harassment or intimidation of one juror by another would not be competent evidence to impeach the verdict under Rule 606(b) of the Federal Rules of Evidence. *See United States v. D'Angelo,* 598 F.2d 1002, 1004 (5th Cir.1979); *Smith v. Brewer,* 444 F.Supp. 482 (S.D.Iowa), *aff'd,* 577 F.2d 466 (8th Cir.), *cert. denied,* 439 U.S. 967, 99 S.Ct. 457, 58 L.Ed.2d 426 (1978); *Simmons First Nat'l Bank v. Ford Motor Co.,* 88 F.R.D. 344 (E.D.Ark.1980); *see also Jacobson v. Henderson,* 765 F.2d 12 (2d Cir.1985).

#### (7) *Prosecutorial Misconduct*

Defendant John Roberts argues that his conviction should be reversed because of alleged prosecutorial misconduct in the Government's opening argument, examina-

tion of witnesses and rebuttal summation. His brief cites to numerous instances in the record, which we have carefully examined. In the context of the entire trial, the challenged statements and conduct does not merit a reversal of these convictions. *See United States v. Esle,* 743 F.2d 1465, 1477 (11th Cir.1984).

■ For instance, Roberts contends that the Government's opening argument contained a burden-shifting suggestion in the following statement:

> An indictment is not evidence. It is the vehicle by which charges are brought in federal court, a vehicle by which the Defendants are called to answer in a criminal trial....

The district court, however, carefully instructed the jury on the point so there could be no misunderstanding that the Government had to prove its case beyond a reasonable doubt.

> The indictment is not evidence against the accused and affords no inference of guilt. The Government has the burden of proof to establish guilt beyond a reasonable doubt as to every essential element in the respective counts set forth in the indictment. The Defendants, each of them, is presumed by the law to be innocent. A Defendant is not required to prove his innocence or produce any evidence at all. The Government has the burden of proving him guilty beyond a reasonable doubt and if it fails to do so you must acquit him.

As to the examination of witnesses, the district court continually ruled on objections when made in a way to preserve the integrity of the trial. This trial was presided over by an experienced trial judge who has wide discretion in deciding whether attorney's conduct results in an unfair trial, because of the greater ability of a judge in the courtroom to determine the effect on a jury of such conduct. Defendant has failed to convince us that there was any abuse of discretion in denying a mistrial in this case.

As to the closing argument, the comment objected to appears not to exceed the scope of fair response. The Government did not impermissibly vouch for the veracity of prosecution witnesses.

**(8)** *Ineffective Assistance of Counsel*

■ Defendant Miguel Brito–Williams contends that his retained trial counsel rendered ineffective assistance in violation of his Sixth Amendment rights. Although defendant voiced dissatisfaction with counsel from time-to-time during the trial, no evidentiary hearing on matters occurring outside the courtroom was ever requested or held. Under these circumstances, this Court is precluded from considering Brito–Williams' allegations of counsel's prejudicial performance on this direct appeal. *United States v. Griffin,* 699 F.2d 1102, 1109 & n. 15 (11th Cir.1983); *United States v. Badolato,* 701 F.2d 915, 925–26 (11th Cir.1983).

### *Conclusion*

A careful review of each defendant's brief and oral argument, and the pertinent parts of the 67 volume record fails to reveal that any conviction appealed is inconsistent with the present applicable law.

AFFIRMED.