**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Antonio VIGIL–MONTANEL, Elio Baca-ro-Garcia, Defendants-Appellants.**

No. 84–5159.

United States Court of Appeals,
Eleventh Circuit.

Feb. 22, 1985.

Charles G. White, Miami, Fla., for Montanel.

Kenneth T. Lange, Miami, Fla., for Garcia.

Stanley Marcus, U.S. Atty., Linda Collins Hertz, Roy J. Kahn, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before HILL, KRAVITCH and SMITH,* Circuit Judges.

JAMES C. HILL, Circuit Judge:

This appeal arises from the conviction of two defendants, under 49 U.S.C. § 1472(i)(1) and 18 U.S.C. § 2, for attempted aircraft piracy. We affirm the convictions.

## I FACTS

At around 3:00 p.m. on September 14, 1983, three Spanish-speaking, Latin males (including the two appellants in this case) each purchased, with cash, a one-way plane ticket to Tampa at Miami International Airport. The ticket agent became suspicious of the three men, primarily because the flight to Tampa was not scheduled to depart until 7:30 p.m. and they were just waiting around the lobby but unwilling to take an earlier flight; she therefore earmarked the tickets and pointed out the three men to her supervisor.

At about 7:00 p.m., appellant Bacaro-Garcia and another of the three men approached the main security checkpoint to enter the concourse of the airport. At the checkpoint, a security guard did a routine pat-down search of Bacaro-Garcia, finding a plastic bottle filled with gasoline and a cigarette lighter in one of his socks. As the security guard stood up holding the bottle, he said "What is this?" Bacaro-Garcia responded that it was "medicino," or medicine.

At this time, appellant Vigil-Montanel had already boarded the plane. Police officers entered the plane, and the ticket agent's supervisor pointed out Vigil-Montanel. He was escorted off the plane and searched. Another bottle of gasoline and a toy plastic gun were discovered in his socks on his right and left legs. An airlines employee testified that as Vigil-Montanel was being escorted off the plane he exclaimed in Spanish, "No, no, didn't want to go to Cuba.... My friend made me do it."

The third person was never apprehended.

Both appellants were later interviewed by an FBI agent and a Dade County detective, after being advised of their *Miranda* rights. Both made similar statements: that they each had arrived in Miami within the last day from New York on a Greyhound bus; that they took a taxi to Miami International Airport after deciding to fly to Tampa; and that they were each approached at the airport by an unknown individual who offered them money (15–20 dollars) for carrying a bottle filled with liquid aboard the aircraft, which they each agreed to do. Vigil-Montanel alleged that he had found the toy gun on the street a

* Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

while back and that he had carried it in his sock ever since.

On January 16, 1984, the jury found both defendants guilty as charged. They were each sentenced to 25 years imprisonment.

## II DISCUSSION

Appellants raise five issues between them on appeal. Three of them are without any merit and will not be discussed.[1] We address arguments made as to the sufficiency of the evidence to convict, and as to the district court's failure to suppress the statement made by Bacaro-Garcia at the security checkpoint that the bottle found in his sock contained medicine.

### A. *Failure to Suppress Statement.*

Bacaro-Garcia contends that his statement was the fruit of improper custodial interrogation, and that the error in failing to suppress it was critical to his defense and cannot be considered harmless.[2] We disagree, holding that the statement was properly admitted.

 We do not reach the issue of whether or not the security guard's exclamation, "What is this?," would have been an improper interrogation under custodial circumstances so that the answer, "medici-

no," would be excludable; for it is clear that there was no custodial situation here. When a prospective airline passenger is delayed in boarding a plane while going through the security search procedure, that delay does not amount to the passenger's being detained or placed in custody so as to require that *Miranda* warnings be given before any questioning occurs. The situation is analogous to routine interrogation at the border, where the fifth amendment guarantee against self-incrimination is not offended because of "the overriding power and responsibility of the sovereign to police national borders."[3] *United States v. Lueck*, 678 F.2d 895, 899 (11th Cir.1982). Similarly, routine questioning of passengers boarding an airplane does not offend the fifth amendment because of the overriding interest in insuring the safety of the aircraft and its passengers.[4] Routine questions and answers between an airport security guard and a prospective passenger at a security checkpoint are admissible, absent further circumstances indicating that the passenger is in official custody.

### B. *Sufficiency of Evidence.*

Both appellants contend that the evidence is insufficient to sustain their convic-

---

**1.** Bacaro-Garcia alleges that he was denied his statutory right to a speedy trial; and that the district court improperly denied his post-trial, pre-sentencing motion for a neurological examination to test for the existence of organic brain damage. Vigil-Montanel contends that the district court committed prejudicial error by denying his motion to strike the entire jury venire after an allegedly prejudicial statement made by one potential juror who was dismissed for cause.

**2.** The district court determined that Bacaro-Garcia had been the suspect of an investigation for several hours before his pat-down, that he was in custody at the time of his statement; and that the statement was in response to a question from the security guard who had just searched appellant. However, the court denied the motion to suppress, concluding that the statement, "What is this?," was a spontaneous statement made by the guard and thus not a "custodial interrogation."

**3.** This court has analogized airport security searches to border searches for the purposes of

fourth amendment analysis. *See, e.g., United States v. Herzbrun*, 723 F.2d 773 (11th Cir.1984); *United States v. Skipwith*, 482 F.2d 1272, 1275–76 (5th Cir.1973). We think that the analogy also applies for fifth amendment purposes.

**4.** In *United States v. Cyzewski*, 484 F.2d 509 (5th Cir.1973), *cert. dismissed*, 415 U.S. 902, 94 S.Ct. 936, 39 L.Ed.2d 459 (1974), the Fifth Circuit upheld a warrantless airport security search of checked luggage, and the seizure of drugs found in the luggage, against a fourth amendment challenge, stating that

[t]he courts have consistently held airport security measures constitutionally justified as a limited and relatively insignificant intrusion of privacy balanced against the need to protect aircraft and its passengers.... Airport security measures are reasonable, therefore, insofar as they permit government agents to determine whether a suspect presents an immediate danger to air commerce.

*Id.* at 511, 513. The same analysis applies to justify the routine questioning present in the instant case against a fifth amendment challenge.

tions for attempted hijacking. Vigil-Montanel asserts that there was no direct evidence of his intent to hijack the plane, and that he was convicted merely because he was a Cuban refugee recently arrived in the country. Bacaro-Garcia contends that his actions constituted "mere preparation" insufficient to sustain an attempt conviction. We hold that the evidence clearly supports the convictions.

*United States v. McDowell,* 705 F.2d 426, 427–28 (11th Cir.1983), indicates that a defendant may be convicted of an attempted crime if he was "acting with the kind of culpability otherwise required for the commission of the crime which he is charged with attempting;" and if he committed a substantial act toward the commission of the crime which was "strongly corroborative of the firmness of the defendant's criminal intent."

■■■ A defendant's intent can be inferred from his conduct and all the surrounding circumstances. *See United States v. Arredondo-Morales,* 624 F.2d 681, 684 (5th Cir.1980). In the instant case, criminal intent is easily inferred from the circumstantial evidence found in the record. The jury chose not to accept the appellants' unbelievable explanations of their conduct, and concluded that they were guilty.

The appellants carried out several substantial acts sufficient to sustain an attempt conviction. Bacaro-Garcia was arrested as he was about to board the plane with a bottle filled with gasoline, and Vigil-Montanel was arrested after having already boarded the plane. This evidence of appellants' state of "armed readiness" on or in the process of boarding the plane is sufficient to sustain the convictions.

AFFIRMED.