UNITED STATES of America,
Plaintiff–Appellant,

v.

Mariela PAREJA, Defendant–Appellee.

No. 88–5324.

United States Court of Appeals,
Eleventh Circuit.

July 13, 1989.

Frank H. Tamen, Linda Collins Hertz, Mayra Reyler Lichter, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellant.

Theodore J. Sakowitz, Federal Public Defender, Hector L. Flores, Asst. Federal Public Defender, Miami, Fla., for defendant-appellee.

Before TJOFLAT and JOHNSON, Circuit Judges, and BROWN *, Senior Circuit Judge.

JOHN R. BROWN, Senior Circuit Judge:

Mariela Pareja (Pareja) was tried and convicted for possession of at least 500 grams of cocaine with intent to distribute (Count I)[1] and conspiracy to distribute at least 5 kilograms of cocaine (Count II).[2] She was charged on the theory of aiding and abetting her sister, Beatrice Escobar (Escobar) who pleaded guilty.[3] Pareja was found guilty after a jury trial. The trial court then sentenced Pareja to the minimum term of 5 years on Count I, to be followed by a 4-year term of supervised release and a 5-year term on Count II to run concurrently with Count I. Immediately following the sentencing, Pareja moved for a judgment of acquittal[4] on the grounds that the jury convicted her on legally insufficient evidence. The trial

---

* Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. 21 U.S.C. § 841(a)(1).

2. 21 U.S.C. § 846

3. Escobar, additionally was charged with 4 counts of using a telephone in the commission of a felony under 21 U.S.C. § 843(b) & (c). The charges were dismissed when Escobar pleaded guilty to Counts I and II.

4. F.R.Crim.P., Rule 29.

court granted the motion and dismissed the indictment. The United States appeals.

## Standard of Review

The granting of a judgment of acquittal is a question of law and we owe no special deference to the trial court. When a trial court has granted a judgment of acquittal on the basis of insufficient evidence, the test is whether the jury could reasonably have found the defendant guilty beyond a reasonable doubt,[5] that is, is the evidence sufficient to sustain the conviction.[6] After reviewing the case in the light most favorable to the government,[7] we hold the evidence was sufficient for the jury to have found Pareja guilty.

## The Crime

Pareja was charged under a theory of aiding and abetting.[8] To be guilty of aiding and abetting, the prosecution must show, first, that a substantive offense was committed[9] and next, an act by the defendant which contributed to and furthered the offense with the intent of the defendant to aid in the commission of the substantive offense.[10]

5. *United States v. Gonzalez,* 617 F.2d 104, 106 (5th Cir.1980), *cert. denied,* 449 U.S. 868, 101 S.Ct. 202, 66 L.Ed.2d 86 (1980).

6. *United States v. Gregory,* 730 F.2d 692 at 706 (11th Cir.1984), *cert. denied,* 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985) ("Because the evidence is sufficient to sustain the convictions ... it would have been improper for the trial court to grant the defendants' motions for judgments of acquittal.").

7. When reviewing for sufficiency of the evidence, the evidence is looked at in the light most favorable to the government and all reasonable inferences are drawn in favor of the jury verdict. *United States v. Gregory,* 730 F.2d 692, 700, *cert. denied,* 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321.

8. 18 U.S.C.S. § 2(a), ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.").

9. *United States v. Barfield,* 447 F.2d 85 (5th Cir.1971) (Government must establish beyond a reasonable doubt that the alleged offense was committed by someone and that the person charged as an aider and abettor assisted in the commission of the crime.).

## Just the Facts, Ma'am: The Government's Case

The underlying substantive offense in this case was a cocaine deal between DEA undercover agent Al Rollins and Escobar which was set up by a confidential informant, Diego Patino.

On August 6, 1987, Patino arranged for Escobar to sell to Rollins 9 kilograms of cocaine at $18,000 a kilogram. The deal was to take place in Escobar's condominium with Escobar, Rollins and Patino present. In order to set up the meeting, Patino made several preliminary phone calls to Escobar through a beeper number.

At the time of the transaction, the condominium where Escobar lived was under surveillance by DEA agents. Just after Rollins and Patino entered the building and went up to Escobar's condominium, the agents conducting surveillance observed Pareja and another woman, Ana Lopez, emerge. Pareja remained outside the building for the remainder of the transaction.

After Rollins agreed to buy 2 kilograms of cocaine from Escobar,[11] he informed Es-

10. *United States v. Guida,* 792 F.2d 1087 (11th Cir.1986); *United States v. Brantley,* 733 F.2d 1429 (11th Cir.1984), *cert. denied,* 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383; *United States v. Phillips,* 664 F.2d 971 (5th Cir.1981) *cert. denied, Meinster v. United States,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354, *Myers v. United States,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 and *Platshorn v. United States,* 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1981).

This Circuit also formulates aiding and abetting as a three part test. *See e.g., United States v. Broadwell,* 870 F.2d 594 (11th Cir.) (To prove aiding and abetting, government must show that defendant (i) associated himself with the criminal venture, (ii) wished to bring it about, and (iii) sought by his actions to make it succeed.). There is essentially no difference between the tests. *United States v. Guida,* 792 F.2d 1087, 1096; *United States v. Hewitt,* 663 F.2d 1381, 1385 (11th Cir.1981).

11. Although the original deal was for 9 kilograms, Escobar informed Rollins after he arrived at the condominium that she could only supply 2 kilograms as her source was not comfortable selling 9 kilograms at one time. Instead, she promised the other 7 kilograms would be delivered later.

cobar that Patino would have to leave the condominium and get the money from a man waiting outside. Patino went downstairs and conferred with two other DEA agents. The three men then reentered the building and went to Escobar's condominium.

The government introduced testimony that, at this point, Pareja called Escobar and warned her that three men were coming back up. DEA agent Johnson observed Pareja pick up the telephone and because Rollins was wearing a hidden microphone that was transmitting Escobar's comments to the DEA agents, Johnson simultaneously heard the phone in Escobar's condominium ring and Escobar's portion of the phone conversation. Escobar was overheard by the agents to ask, as part of her conversation on the phone, why two men (in addition to Patino) were coming up. After hanging up, Escobar then asked Rollins why all those men were coming up. The jury could thus infer that from the conversation with Pareja, Escobar had learned of the three men coming up.

Upon reentering the condominium, the DEA agents attempted to learn from Escobar where the rest of the cocaine was but at this point Escobar, nervous about having more men in her condominium than she had planned on, refused to negotiate further. The DEA agents then identified themselves and arrested Escobar for possession of cocaine with intent to sell.

After hanging up the telephone Pareja was observed getting into a car parked on a side street which she drove away. Pareja returned after about 10 minutes and parked in front of the building whereupon Lopez got in the car with her.

Having observed Pareja's presence and activities during the drug transaction, the DEA agents were suspicious of Pareja and thought that she might have been acting as a lookout for Escobar. They approached the car and asked Pareja where she had been. Pareja replied that she had been at the grocery store with her friend, Lopez, that she had been there for more than an hour and that they had just returned. The DEA agent challenged the story and said that she had been observed in front of the condominium not 20 minutes earlier whereupon Pareja claimed that she had just made a second trip to the store by herself.

The DEA agents requested that she accompany them to their headquarters. Pareja complied and, after being informed of her Miranda rights, was questioned extensively about her activities. During the course of the questioning, the DEA agents saw that Pareja was carrying a telephone beeper device.[12] After they pressed the memory button of the device the agents found that it still recorded a call they had placed earlier that day to Escobar. To the agents, Pareja stated that she had exclusive control of the beeper device. Pareja was then placed under arrest.

### The Defense Case

In her defense, Pareja put forward an explanation about the beeper, her presence in the condominium and the phone call she placed to her sister. She said that she had carried the beeper ever since her husband had obtained it for use in the operation of his bookstore, which closed in 1982. She testified that she did not have exclusive control over the beeper, and that various members of her family also used it. She also testified that she visited her sister regularly at the condominium and that on this particular day she had been in and out of the condominium several times on various shopping errands.

Regarding her conversation with Escobar on the telephone when the three DEA agents were going up to the condominium, Pareja testified that the security guard informed her as she arrived at the building after one of her shopping trips, that the police were going up to her sister's condominium. Because her daughter was upstairs, Pareja claimed she was concerned

---

**12.** Pareja was carrying the device in her purse. During the interview the DEA agent was alerted to the presence of the beeper when it made a noise.

about what was happening in the condominium and called her sister to ask why three policemen were going up.

### What the Jury Could Reasonably Find

■ For the jury to have convicted Pareja, there must have been evidence that a substantive offense had been committed and that, with the intent to further the crime, Pareja had associated herself with the venture and committed some act which furthered the crime.

■ From our review of the record we conclude that the jury could reasonably have reached such conclusions and consequently, the trial erred in granting Pareja's motion for judgment of acquittal.

The substantive offense requirement is met by Escobar's guilty plea to Counts I and II. The acts that Pareja committed to further the crime included possessing and utilizing the beeper to receive information, and telephoning her sister to warn her that law enforcement officers were coming up. The intent requirement is supplied by the surrounding circumstances, especially from Pareja's varying and inconsistent story accounting for her activities.[13]

The government's claim that Pareja aided and abetted Escobar was based on the theory that she kept the beeper that was instrumental in setting up the drug deal. In addition, she had phoned Escobar to warn her that three men, not just one, were coming up to the condominium. Finally, the establishment of intent overcame the claim of innocence of her acts.

Pareja's reliance on *United States v. Pantoja–Soto*[14] and *United States v. DeSimone*[15] fails. These cases of mere association and mere presence were held to be insufficient to sustain a charge of aiding and abetting. Here, the government's case went further to establish acts that connected Pareja to the substantive offense and the jury could determine whether possession and likely use of the beeper constituted an overt act of aiding and abetting.

Finally, Pareja challenges the contention that she made a false exculpatory statement to the DEA agents which was contradicted by the version of events she gave at trial. Her claim that these contradictions resulted from her difficulties with the English language has no substance since she chose to give most of her testimony at trial in English even though an interpreter was present.

All Pareja raises is a question of credibility which the jury resolved in the government's favor. The jury chose to believe the government's witnesses, not Pareja, and the trial court erroneously set aside those determinations.

The judgment of the District Court is reversed. On receipt of our mandate, the District Court shall reinstate the jury's verdict and appellee's sentence.

**REVERSED and REMANDED.**

---

**13.** *See, United States v. Vigil–Montanel,* 753 F.2d 996, 999 (11th Cir.1985) ("A defendant's intent can be inferred from his conduct and all the surrounding circumstances."), and *United States v. Arrendondo–Morales,* 624 F.2d 681, 684 (5th Cir.1980) ("Because guilty knowledge is difficult to prove by direct evidence, surrounding circumstances may supply inferences of knowledge which adequately prove intent.").

**14.** 739 F.2d 1520 (11th Cir.1984), *cert. denied,* 470 U.S. 1008, 105 S.Ct. 1369, 84 L.Ed.2d 389 (1985).

**15.** 660 F.2d 532 (5th Cir. Unit B 1981), *cert. denied, Butler v. United States,* 455 U.S. 1027, 102 S.Ct. 1732, 72 L.Ed.2d 149 and *Broderick v. United States,* 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444 (1982).