**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Anthony Keith JONES, a/k/a Kenneth R. Jones, David Michael Minyard, Michael Cavaliere, Bonnie Grisson Russell, Defendants–Appellants.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Daniel Michael MINYARD,
Defendant–Appellant.**

**Nos. 89–3070, 89–3738.**

United States Court of Appeals,
Eleventh Circuit.

Oct. 11, 1990.

---

R. Glenn Arnold, Altamonte Springs, Fla., for Anthony Jones.

Laura E. Keene, Barry W. Beroset, Beroset & Keene, Pensacola, Fla., for David M. Minyard.

Thomas S. Keith, Asst. Federal Public Defender, Pensacola, Fla., for Cavaliere.

Al Pennington, Mobile, Ala., for Bonnie Russell.

Barbara D. Schwartz, Randy Hensel, Kevin Michael Moore, Kenneth W. Sukhia, Asst. U.S. Attys., Pensacola, Fla., for plaintiff-appellee.

Before CLARK, Circuit Judge, MORGAN and RONEY,* Senior Circuit Judges.

MORGAN, Senior Circuit Judge:

Defendants appeal their convictions for conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. Sec. 846, and for possession of cocaine with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. We affirm.

## INTRODUCTION

On October 3, 1987, David Sanford Jones was arrested following a search of his residence in which 670 grams of cocaine were discovered. David Jones agreed to cooperate with the government and told of various cocaine transactions in which he had been involved. Among the people he identified were the appellants in this case. David Jones later helped police obtain recorded telephone conversations with appellants Cavaliere and Jones, among others.

Each of the appellants was charged with one count of conspiracy to possess cocaine

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

with intent to distribute. Additionally, Michael Cavaliere, Anthony Keith Jones and Bonnie Russell were each charged with one count of possession of cocaine with intent to distribute.[1] David Michael Minyard was charged with six counts of possession of cocaine with intent to distribute.

At trial in the Northern District of Florida, David Jones was the principal witness for the government. Jones testified that, between November 1985 and October 1987, he supplied Michael Cavaliere, Anthony Keith Jones and Michael Minyard with cocaine he obtained from his suppliers in south Florida. Bonnie Russell served as his driver on some of the trips between Florida, Tennessee and South Carolina. Nancy Parker and Mylan Daugherty, who had also helped Jones by driving for him, testified for the government and substantially corroborated much of Jones's testimony, as did Nelson Izquierdo, who, along with Miguel Perez, had been the source of the drugs Jones and the others distributed.[2]

The jury convicted each of the defendants on the conspiracy and possession counts as charged.[3] All defendants appeal their convictions. Each contends that the evidence at trial was not sufficient to sustain the verdicts and each asserts an assortment of other issues as well.

## DISCUSSION

## I. SUFFICIENCY OF THE EVIDENCE

All of the defendants below argue that the evidence was insufficient to support their convictions. This Court cannot reverse a conviction for insufficiency of the evidence unless after reviewing the evidence in the light most favorable to the government, we conclude that no reasonable jury could find proof beyond a reasonable doubt. *United States v. Bennett*, 848 F.2d 1134, 1138 (11th Cir.1988).

To support a conviction for conspiracy, the government must prove only that two or more persons agreed to commit a crime, that the defendant knew of the conspiratorial goal, and that he voluntarily participated in helping to accomplish that goal. *United States v. Lee*, 695 F.2d 515, 518 (11th Cir.), *cert. denied*, 464 U.S. 839, 104 S.Ct. 130, 78 L.Ed.2d 125 (1983). The existence of such an agreement may be proved by either direct or circumstantial evidence; a common scheme or plan may be inferred from the conduct of the alleged participants or from other circumstances. *United States v. Bascaro*, 742 F.2d 1335, 1359 (11th Cir.1984), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3476, 87 L.Ed.2d 613 (1985). It is not necessary for the government to prove that a defendant knew every detail or that he participated in every stage of the conspiracy. *Lee*, 695 F.2d at 518. Nor is it necessary for the government to disprove every reasonable hypothesis of innocence, as the jury is "free to choose among reasonable constructions of the evidence." *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir.1983) (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983)).

After carefully reviewing the evidence in the light most favorable to the government, we hold the evidence sufficient to sustain the convictions of each defendant. Specific evidence against each defendant is set out separately below.

### A. *Michael Cavaliere*

David Jones testified at trial that he delivered cocaine to Cavaliere, in Pensaco-

---

1. Cavaliere and Anthony Keith Jones were also charged with using a communication facility in facilitating the commission of a felony. On these counts, judgments of acquittal were granted during the trial.

2. Parker, Perez and Izquierdo were also named in this indictment. Miguel Perez came to trial with the appellants but pleaded guilty before the trial ended. Parker was not prosecuted by the federal government in return for her cooperation; she pleaded guilty in state court on state narcotics charges. Daugherty was not indicted. Izquierdo pleaded guilty before trial as did another defendant, Lewis Leachman, who had been another of David Jones' drivers.

3. Michael Cavaliere, charged in the indictment with possession of two kilograms of cocaine with intent to distribute, was convicted of the lesser included offense of possession of less than 500 grams of cocaine with intent to distribute.

la, from November 1985 until the summer of 1986 when Cavaliere was hospitalized as a result of his own cocaine abuse. Cavaliere received twenty ounces from two kilograms of cocaine Jones brought back after one of his first trips to south Florida. The cocaine was "fronted," or provided on credit, to Cavaliere, who was to repay Jones from the proceeds of the resale of the cocaine. Jones continued to supply Cavaliere with cocaine on a frequent basis. He accompanied Cavaliere to Mississippi to attempt a sale. Jones testified that he was owed $20,000 by Cavaliere at the time of his arrest.

There was evidence that Cavaliere rendered other assistance to Jones and the cocaine distribution conspiracy. On one occasion, Perez was waiting for Jones to return with money from the South Carolina distributors. Jones had Cavaliere telephone him several times during his meeting with Perez, to give Perez the idea that someone was watching over Jones during the delivery of the money. There was also testimony that Cavaliere had met Parker, Leachman and Russell at Jones's apartment and had been present when details of the distribution conspiracy were discussed. This was sufficient evidence to allow a reasonable trier of fact to conclude that Cavaliere was a member of a cocaine distribution conspiracy beyond a reasonable doubt.

### B. *Anthony Keith Jones*

■ David Jones testified that he made four deliveries of cocaine to Anthony Keith Jones in Tennessee and one delivery in Pensacola. The amounts of cocaine actually delivered, according to David Jones, totaled slightly less than one kilogram. These deliveries were made on credit, after Anthony Keith expressed interest in trying to sell cocaine in the Nashville area. David Jones testified to at least four other trips he made to Tennessee to collect money. Although on some of these other trips he took cocaine intending to deliver it to Anthony Keith, he refused to turn it over when Anthony Keith could not produce money owed for earlier transactions. Anthony Keith at one time admitted to David

Jones that he had used the money he got from cocaine sales to finance a marijuana scheme.

This testimony was corroborated in part by Nancy Parker. The government produced receipts from motels in which David Jones stayed while in Tennessee. This evidence was sufficient to allow the jury to find Anthony Keith Jones guilty of conspiracy beyond a reasonable doubt.

■ Jones also contends that the evidence was not sufficient to support his conviction for possession of cocaine. He was convicted of possession with intent to distribute two kilograms of cocaine, on or about August 27, 1987, in the Northern District of Florida. Jones misconstrues the nature of the charges against him when he insists that his absence from the Northern District of Florida on August 27 proves his innocence.

David Jones testified that he passed through the Northern District of Florida on or about August 27 carrying two kilograms of cocaine which eventually were carried to Anthony Keith Jones in Tennessee, who had arranged for a buyer there. Although this transaction eventually fell through, these facts are sufficient to establish the guilt of Anthony Keith Jones on the possession count as charged.

■ An accused may be found to have aided and abetted a coconspirator's possession by virtue of his participation in the conspiracy. *United States v. Stitzer*, 785 F.2d 1506, 1519 n. 7 (11th Cir.), *cert. denied*, 479 U.S. 823, 107 S.Ct. 93, 93 L.Ed.2d 44 (1986). The standard test for determining guilt by aiding and abetting is to determine whether a substantive offense was committed by someone, whether there was an act by the defendant which contributed to and furthered the offense, and whether the defendant intended to aid its commission. *United States v. Pareja*, 876 F.2d 1567, 1568 (11th Cir.1989).

■ Anthony Keith Jones not only participated in the conspiracy to possess and distribute cocaine, his offer to help David Jones distribute cocaine furthered, indeed

was one motivating factor for David Jones obtaining this cocaine in the first place. The requisite intent is clearly established by the evidence outlined above. *See United States v. Brantley*, 733 F.2d 1429, 1434–35 (1984) (suppliers of drug properly convicted of possession due to aiding and abetting the actual possession of their buyers). Alternatively, guilt for an offense committed by another may be established by proof that the accused conspired with the other to commit it. *Pinkerton v. United States*, 328 U.S. 640, 646, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946). The jury was correctly instructed as to how they could find the defendants guilty on the possession counts and the evidence is sufficient to support the guilty verdicts that the jury returned.[4]

### C. *David Michael Minyard*

■ Most of the cocaine received by David Jones in south Florida was delivered to Greenville, South Carolina. Jones testified that his first transactions in Greenville were with Dorsey Ivester,[5] but that he subsequently learned from Ivester that the cocaine was obtained on behalf of Ivester's son-in-law, Minyard. Jones testified further that he met with Minyard more than ten times, that Minyard was present on at least four occasions when the cocaine was delivered, that Minyard's employees removed the cocaine from the car door panel in which it was hidden, that on two occasions this had been done on Minyard's prop-

erty[6] and that Jones discussed quality and price with Minyard and received money due on the cocaine from Minyard. Jones's testimony that Minyard had once come to meet him in Pensacola to discuss cocaine was corroborated by a motel receipt produced by the government and bearing Minyard's name.

Minyard contends that the evidence adduced at trial establishes nothing more than his mere presence during cocaine transactions between Jones and Ivester. The testimony by David Jones, however, can be more accurately summarized as establishing that Minyard participated in the receipt of large amounts of cocaine and then paid Jones for it.[7] It is sufficient evidence to allow a reasonable juror to find Minyard guilty of conspiracy beyond a reasonable doubt.

Minyard also appeals his conviction on the possession counts. He contests the sufficiency of the evidence and lack of venue in the same fashion as Anthony Keith Jones, relying on his absence from the Northern District of Florida on the dates charged in the indictment to support his claimed innocence. For the same reasons we rejected Jones's argument, we find no merit in Minyard's assertions of error below.

### D. *Bonnie Russell*

■ Russell, too, argues that the evidence was insufficient to support her con-

---

4. Anthony Keith Jones contends that venue was lacking in the Northern District of Florida. We have held, however, that a defendant can be convicted of possession in a district because of his coconspirator's possession in that district. *United States v. Long*, 866 F.2d 402 (11th Cir. 1989). *See also United States v. Russo*, 796 F.2d 1443 (11th Cir.1986) (defendant's guilt on possession count established by showing he supplied drugs to coconspirators who possessed the drugs in the district in question and criminal intent adequately established because defendant possessed drugs in another district).

5. Ivester was indicted for his participation in this conspiracy, but the indictment against him was dismissed. *See infra.*

6. The cocaine was removed in the garage of Minyard's body shop.

7. Minyard argues that Jones's testimony is inherently incredible and that no reasonable juror could believe it. In support of this claim, he offers only his assessment that the testimony was not specific enough and went "generally as to his practice and course of conduct." To find that Jones's testimony was so inherently incredible it would have to be disregarded, we would have to find that it was "unbelievable on its face," *United States v. Rivera*, 775 F.2d 1559, 1561 (11th Cir.1985), *cert. denied*, 475 U.S. 1051, 106 S.Ct. 1275, 89 L.Ed.2d 582 (1986), or "so contrary to the teachings of human experience" that no rational person could believe it. *United States v. Chancey*, 715 F.2d 543, 546 (11th Cir. 1983). Jones's testimony, while perhaps at times confused or uncertain as to dates or details of long-past events, was not unbelievable or contrary to human experience.

victions on both the conspiracy and substantive counts. After reviewing the evidence in the light most favorable to the government, we cannot conclude that no reasonable jury could find proof of guilt beyond a reasonable doubt.

David Jones testified at trial that he asked Russell to drive him on several of his trips to pick up and deliver cocaine. The first trip was in December 1986. Jones offered her $1,000 to drive him to Miami and back to pick up cocaine from Perez and Izquierdo. She later made several trips to both Nashville and Greenville. The government produced a receipt from a car rental company showing that Russell had leased a car. Jones testified that he preferred to use rental cars on the trips and that he preferred that someone other than himself rent them.

Jones testified that he never told Russell what the trips were for; when she asked him, he refused to tell her, suggesting only that it was "business." Jones admitted that he and Bonnie Russell had done cocaine together in the past and that they used the drug during the trips on which Russell served as driver. Jones further admitted that he had testified before the grand jury that he had assumed Russell had realized the trips were for the purpose of dealing in cocaine. She knew most of the people involved in the conspiracy, and Jones considered her "part of the group."

Some of the most significant evidence against Russell, however, came not from David Jones but from another government witness, Angela Rowell. Rowell and her husband, Danny, had also sold cocaine supplied by David Jones. Rowell testified that Jones and Russell had come to her home, seeking her husband's assistance in removing the inside panel of Russell's car door and hiding cocaine inside. Rowell further testified that while Jones and her husband had worked on the door, she and Russell had for a time watched them work. From this evidence the jury could reasonably have inferred that Russell was aware of the cocaine and knowingly participated in the conspiracy to distribute it.

This evidence is also sufficient to support Russell's conviction on the substantive count of possession with the intent to distribute. Though she may never have had control over any cocaine destined for resale, the evidence is sufficient to show that Russell aided and abetted the possession of cocaine with the intent to distribute.

In *Pareja*, 876 F.2d at 1568, the defendant's conviction for possession of cocaine was upheld on the basis of evidence of conduct that suggested she could have been acting as a lookout during a drug transaction involving her sister. The only other evidence against Pareja was that, at the time of her arrest, she had possession of a beeper that had been used in setting up the drug transaction. *Id.* at 1569–70. The jury could have concluded that these acts by Pareja were done with the intent to aid her sister's possession. Therefore, the Pareja conviction for possession as an aider and abettor, was upheld. *Id.* at 1570.

Russell's conviction, too, must be upheld. The jury could reasonably have inferred that Russell was aware of the cocaine she transported. She knowingly assisted Jones in his possession and distribution of cocaine. The jury could reasonably have concluded from the evidence that she intended to further the criminal venture. Her conviction on the substantive count must be affirmed.

## II. VARIANCE

■ Cavaliere, Minyard and Anthony Keith Jones argue that there was an impermissible variance between the indictment and the proof at trial. They contend that, instead of establishing a single conspiracy, the evidence did no more than establish the existence of multiple conspiracies between David Sanford Jones and each of the defendants separately.

■ A variance between allegations and proof is reversible error only when it actually prejudices the defendant. *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *United States v. Caporale*, 806 F.2d 1487, 1499 (11th Cir. 1986), *cert. denied*, 482 U.S. 917, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987). We conclude

that there was not a material variance in this case.

█ In determining whether a single conspiracy could reasonably have been found to have existed, we consider three factors: 1) whether a common goal existed, 2) the nature of the scheme and 3) the overlap of participants. *Caporale*, 806 F.2d at 1500. The evidence at trial showed that Minyard, Cavaliere and Jones shared the common goal of distributing cocaine, furnished by Izquierdo and Perez, and delivered to them by David Jones who was assisted, at times, by Bonnie Russell.

There was evidence that Miguel Perez, David Sanford Jones, Anthony Keith Jones and Dorsey Ivester (Minyard's father-in-law) met in prison, and David Jones testified that he had discussions with Ivester and Perez about distributing cocaine prior to the time the actual scheme was set up. There is no question that most of the cocaine David Jones obtained was intended for Ivester and Minyard. There was other evidence, however, that would have allowed the jury to infer that Cavaliere and Anthony Keith Jones must have known they were the small players in a bigger conspiracy.

Cavaliere phoned David Jones in an effort to provide protection where David Jones went to meet with Perez, who had grown hostile over the delay in receiving money due on cocaine transactions, and of whom David Jones was afraid. Cavaliere admitted at trial that he often went to David Jones's apartment to obtain cocaine because he knew Jones always had it.

Anthony Keith Jones saw David Jones with large amounts of cocaine and offered to help him "get rid of some." David Jones's suppliers were known to Anthony Keith from prison. Neither Cavaliere nor Anthony Keith Jones could have thought he was the only "retailer" for David Jones and each had met other members of the conspiracy, including but not limited to those who served as drivers (Bonnie Russell, Nancy Parker, Lewis Leachman).

█ It is not necessary that conspirators know each other or the details of every part of the conspiracy. *United States v. Michel*, 588 F.2d 986, 995 (5th Cir.), *cert. denied*, 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979). It is only necessary that each defendant have a general knowledge of its overall purpose and scope. In *United States v. Stitzer*, 785 F.2d 1506, 1518 (11th Cir.), *cert. denied*, 479 U.S. 823, 107 S.Ct. 93, 93 L.Ed.2d 44 (1986), one distributor of cocaine connected five geographically separated, multi-person "sub-distributorships," yet the court considered the evidence sufficient to support a finding of one conspiracy. The plan, here to distribute cocaine, "does not become several plans simply because some members were cast in more vital roles or because certain members performed only a single function." *Michel*, 588 F.2d at 995. *See also United States v. Champion*, 813 F.2d 1154, 1167 (11th Cir.1987) (single conspiracy reasonably found despite lack of significant overlap of some participants).

Further, the jury was instructed on the issue of single versus multiple conspiracies, and the convictions of the defendants are "implicit findings that the evidence proved the existence of the single conspiracy alleged." *United States v. Khoury*, 901 F.2d 948, 956 (11th Cir.1990). There was sufficient evidence, as outlined above, for the jury to have found that a single conspiracy existed.

█ Even if the evidence did not support the jury's finding of a single conspiracy, appellants must still show that the variance affected their substantial rights. *Caporale*, 806 F.2d at 1500. Courts have found prejudice to substantial rights from a material variance in two circumstances: 1) where the proof at trial differed so greatly from the charges in the indictment that the defendant was unfairly surprised and had an inadequate opportunity to prepare a defense, and 2) where there are so many defendants and so many separate conspiracies before the jury that there is a substantial likelihood that the jury would transfer evidence from one conspiracy to a defendant involved in another conspiracy. *Id.*

Appellants have failed to show prejudice from any variance that might have occurred. They cannot claim unfair surprise since the alleged variance did not alter the crime charged, the requisite elements of proof or the appropriate defenses in any significant manner. *See id.* Appellants cannot show that there is a substantial likelihood of an impermissible transfer of evidence from one defendant to another. *Cf. Id.* at 1501 (holding that facts involving eleven defendants in a complicated labor union/insurance fraud not so complex that there was risk of significant jury confusion).

### III. MISJOINDER AND SEVERANCE

■■■■ Anthony Keith Jones contends that he was improperly joined as a defendant under F.R.Crim.P. 8(b) and that the trial court improperly denied his motion for severance under F.R.Crim.P. 14. Improper joinder under Rule 8(b) affects substantial rights but requires reversal only if the defendant can show it resulted in actual prejudice. *United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986). Rule 8(b) provides that:

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

■■■■ Joinder is proper where, as here, the indictment charges multiple defendants with participation in a single conspiracy and also charges the defendants with substantive counts arising out of the conspiracy. *United States v. Alvarez*, 755 F.2d 830 (11th Cir.), *cert. denied*, 474 U.S. 905, 106 S.Ct. 274, 88 L.Ed.2d 235 (1985). Having concluded above that the government offered sufficient evidence to support the existence of a single conspiracy, we now

hold that this conspiracy was properly alleged in the indictment. The indictment is not defective because defendant Anthony Keith Jones did not participate in each of the acts alleged to have been in furtherance of the overall scheme. *See Alvarez*, 755 F.2d at 857.

■■■■ Similarly can defendant's argument under Rule 14 be dismissed. Rule 14 provides a remedy for prejudicial joinder even though joinder was proper under Rule 8. *United States v. Morales*, 868 F.2d 1562, 1567 (11th Cir.1989). The trial court's discretion in denying a Rule 14 motion for severance is great and will rarely be disturbed on review. *Alvarez*, 755 F.2d at 857. Jones contends that he was prejudiced by the admission of certain evidence pertaining to the other defendants: tape-recorded telephone conversations of David Jones with Cavaliere and Dorsey Ivester and evidence of criminal offenses committed by a codefendant which were not charged in this trial.

The tape recordings were not hearsay as Jones argues, however. They were recordings of statements made by coconspirators in furtherance of the conspiracy.[8] Fed.R. Evid. 801(d)(2)(E). More importantly, the tape recordings made no mention of Jones. Similarly, Jones can point to no particular prejudicial effect arising from evidence relating to defendant Minyard's arrest in South Carolina on other narcotics charges. Defendant Jones can only suggest that the evidence was so confusing as it pertained to other defendants that it carried a high risk of "spillover."

■■■■ We noted above that the evidence in this case was not so complex nor the defendants so numerous as to pose a high risk of undue confusion. Defendants who are jointly indicted should generally be tried together and this is especially true of conspiracy cases. *Alvarez*, 755 F.2d at 857. Though much of the evidence at trial pertained to other defendants, that is the

---

8. Anthony Keith Jones also asserts error in the admission of the tape recording of a telephone conversation between David Jones and himself. This recording, as it related to the case against

Anthony Keith Jones, is clearly admissible as an admission of the defendant under Fed.R.Evid. 801(d)(2)(A).

nature of a joint trial and there is no improper prejudice in admitting such evidence. *Id.* The jury was properly instructed both at the end of all the evidence and during the course of the trial. Jones certainly cannot show the "specific and compelling prejudice" required before this Court could find a clear abuse of discretion in the trial judge's denial of appellant's motion to sever. *Id.* (holding that no compelling prejudice existed in trying all seven members of drug conspiracy together though some were also charged with the murder of a federal agent).

## IV. COCONSPIRATOR STATEMENTS

 In arguing that the evidence against him was not sufficient to sustain his convictions, Minyard challenges the admission into evidence of a tape-recorded telephone conversation between David Jones and Dorsey Ivester which contained statements incriminating Minyard. Minyard asserts that the tape should not have been admitted as recorded coconspirator statements under Fed.R.Evid. 801(d)(2)(E), because the statements on the tape were not made during and in furtherance of the conspiracy and therefore constituted inadmissible hearsay. Minyard asserts that the conspiracy was over, presumably because David Jones had been arrested and because the real purpose of the phone call was to frustrate not further the conspiracy.

 In order to admit out-of-court statements under Fed.R.Evid. 801(d)(2)(E), the trial judge must determine that the government has proved by a preponderance of the evidence that the declarant and the defendant were involved in an existing conspiracy and that the statement was made in furtherance of that conspiracy. *Bourjaily v. United States,* 483 U.S. 171, 175, 107 S.Ct. 2775, 2778–79, 97 L.Ed.2d 144 (1987). Further, the court may consider the possibly hearsay statement itself as evidence of the conspiracy in determining whether the statement is admissible. *Id.* at 181, 107 S.Ct. at 2787–82. The trial judge in this case made such a factual determination and we see no clear error in this finding.

The Eleventh Circuit applies a liberal standard in determining whether or not a statement is made in furtherance of a conspiracy. *United States v. Turner,* 871 F.2d 1574, 1581 (11th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 552, 107 L.Ed.2d 548 (1989). It was not clearly erroneous, as Minyard asserts, to find the statements recorded to be in furtherance of the conspiracy simply because David Jones had already been arrested. *United States v. Casamayor,* 837 F.2d 1509 (11th Cir.1988), *cert. denied,* 488 U.S. 1017, 109 S.Ct. 813, 102 L.Ed.2d 803 (1989). In *Casamayor,* this Court held that taped statements of codefendants obtained by a coconspirator cooperating with the government were admissible even though some coconspirators had already been arrested. *Id.* at 1513.

In *Bourjaily,* the Supreme Court held that tape-recorded conversations between a declarant and an FBI informant, in which the declarant refers to criminal activity by the accused, were properly admitted as coconspirator statements where the declarant and the accused were members of a conspiracy. As this court stated recently in *United States v. Byrom,* 910 F.2d 725, 730 & n. 9 (11th Cir.1990), it is the relationship between the declarant and the accused, here Ivester and Minyard, that is critical, not the relationship between the declarant and the informant. Ivester's statements were made in furtherance of a conspiracy in which he and Minyard were still participating.

There was evidence here that this conspiracy continued even after the arrest of David Jones since, after his arrest and at his suggestion, Nancy Parker went alone to Greenville to pick up from Ivester money owed on a prior cocaine delivery. There was testimony that Ivester acted on behalf of Minyard. This evidence was sufficient for the court to find that the conspiracy continued past the date of Jones's arrest.

## V. IMPROPER CROSS–EXAMINATION

 Appellant Cavaliere asserts that he was improperly impeached by the government during cross-examination. Cavaliere testified on direct that he had "just made

supervisor in the warehouse" when David Jones telephoned him at work, ostensibly demanding payment for cocaine, but in reality recording the conversation for the government. On cross-examination, he at first denied, then admitted he had been fired from that job after an incident involving a stolen deer stand. Although it was unclear from whom this stand had been stolen or what precisely it had to do with his firing, it was clear that he had been fired as a result of this incident. Cavaliere says that this questioning was improper because it was beyond the scope of direct examination and was impeachment by extrinsic evidence as to a collateral matter. The government contends it was entitled to go into his employment on cross-examination, for all evidence relevant to the subject matter of direct examination is within the scope of cross-examination. *United States v. Beechum,* 582 F.2d 898, 907 (5th Cir. 1978), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

■ Cross-examination is limited to the subject matter of the direct examination and to matters reflecting the credibility of the witness. Fed.R.Evid. 611(b). The trial court has broad discretion under Rule 611(b) to determine the permissible scope of cross-examination and will not be reversed except for clear abuse of that discretion. *United States v. Bent,* 707 F.2d 1190, 1194 (11th Cir.1983), *cert. denied,* 466 U.S. 960, 104 S.Ct. 2174, 80 L.Ed.2d 557 (1984). Whether these inquiries by the government as to Cavaliere's employment exceeded the permissible scope of cross-examination is a close question. After reviewing Cavaliere's entire testimony on direct examination, however, we are unable to state that this line of inquiry clearly exceeded the scope of the direct examination.

Much of Cavaliere's testimony on direct was offered to create the impression that he was a changed man after his 1986 hospitalization for cocaine abuse. He testified that he was no longer involved in drugs, he was employed, he recognized how badly he had treated his family while in the grip of drug addiction, and other such personal items largely irrelevant to the issue of guilt or innocence. Much of this testimony was offered in an off-hand manner, similar to Cavaliere's needless reference to having just been promoted shortly before David Jones telephoned him at work. If one characterizes Cavaliere's direct testimony as an attempt to create a certain impression on the jury, then inquiry on cross-examination as to the truth or falsity of that impression is not clearly beyond the scope of direct examination. Since Cavaliere gratuitously informed the jury on direct examination about his promotion when he knew he had subsequently been fired, cross-examination about the circumstances regarding the termination of his employment was a proper attempt to impeach him. Cavaliere's real complaint is that the government achieved its goal so easily, illustrated by Cavaliere's statement on cross-examination that he left his supervisory position for a better job, a statement he had to retract moments later when confronted with the truth regarding his termination. *See United States v. O'Malley,* 707 F.2d 1240, 1249 (11th Cir. 1983) (following direct testimony regarding witness's knowledge of and compliance with reporting laws, questions about past failures to report certain information was proper impeachment directly reflecting on his character for truthfulness pursuant to Rule 611(b)).

Cavaliere contends that admitting this testimony was contrary to Rule 608(b), which prevents attacking a witness' credibility with extrinsic evidence of specific instances of conduct. That rule is inapposite here. No extrinsic evidence was offered by the government. Cavaliere was impeached as a result of his own statements on cross-examination.

■ Minyard asserts error in the district court's refusal to allow his attorney to try to impeach David Jones with prior deposition testimony that Minyard alleges was inconsistent with Jones's testimony at trial. The court below, after having read into the record the relevant testimony from the deposition, determined that the statements were not at all inconsistent with Jones's in-court testimony. This determination will

not be reversed without an abuse of discretion. *United States v. Leach*, 613 F.2d 1295, 1305 (5th Cir.1980). Exclusion of prior consistent testimony is proper under Fed.R.Evid. 613. The record reflects that, as the trial judge found, the statements were not inconsistent.

## VI. *BRADY* VIOLATION

■■■■ Appellant Minyard states that the district court abused its discretion in denying his second motion for new trial and refusing his request for an evidentiary hearing on an alleged *Brady* violation by the government. Minyard submits that the government failed to inform him that one of its intended witnesses, Dorsey Ivester, recanted his earlier statements implicating Minyard. Ivester did not appear at trial.

Dorsey Ivester is defendant Minyard's father-in-law. After receiving immunity, Ivester cooperated with the United States Attorney for the District of South Carolina in regard to witness tampering alleged to have occurred during an unrelated prosecution of defendant Minyard. Ivester told the government of Minyard's involvement with the cocaine conspiracy at issue here, among other things. When told he would have to testify at this trial, Ivester at first refused, then claimed that not everything he previously told the government about Michael Minyard was the truth. Minyard was not informed of this statement.

Ivester was indicted after failing to appear at a November 1988 pre-trial conference with the Assistant United States Attorney prosecuting this case.[9] It was the government's position that the immunity agreement reached in South Carolina did not bind the United States Attorney in Florida or, alternatively, that lying or refusing to testify breached that agreement and therefore Ivester should be indicted. The indictment against Ivester was dismissed in March 1989, after a hearing in which Ivester admitted that his original statements to the government were the truth. He had claimed to be lying only to avoid testifying against Minyard. He confirmed that, if forced to testify, his testimony would have been unfavorable to Minyard.

■■■■ Minyard moved for new trial in August 1989 on the basis of this alleged *Brady* violation by the government. This motion was denied by the district court. Denial of a motion for new trial will not be reversed absent an abuse of discretion. *United States v. Champion*, 813 F.2d 1154, 1170 (11th Cir.1987).

■■■■ In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that suppression by the prosecution of material evidence favorable to and requested by an accused violates due process. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Pennsylvania v. Ritchie*, 480 U.S. 39, 57, 107 S.Ct. 989, 1001–02, 94 L.Ed.2d 40 (1987).

Minyard cannot show that the evidence supposedly suppressed by the government was either favorable or material. Even if the government had told Minyard that Ivester might have lied in previous statements to the government, nothing in the sequence of events that followed would have been altered. Ivester did in fact confirm prior to trial and to Minyard's attorney that any testimony he might give would be unfavorable.

Prior to the denial of Minyard's new trial motion, the district judge heard Ivester testify, at the hearing on the motion to dismiss the indictment, that his earlier statements incriminating Minyard were true. Thus, there was never any exculpatory evidence at all and Minyard's assertion of error in regard to the denial of his motion for new trial without an evidentiary hearing is without merit.

## VII. ADMISSION OF EXTRINSIC OFFENSE EVIDENCE

■■■■ Government witness Clyde Mackey testified that he had purchased cocaine from Minyard several times in the past two

9. The defendants in this case were tried in November and December of 1988.

years and, following his own arrest by the police, had assisted them in arresting Minyard by making a controlled purchase under police supervision. Minyard pleaded guilty to those charges before trial. Minyard argues that this testimony was inadmissible evidence of an extrinsic offense, offered only to prove his bad character, and unduly prejudicial.

A trial court is afforded broad discretion in deciding the admissibility of extrinsic act evidence under Fed.R.Evid. 404(b), with its decision not reversed absent an abuse of discretion. *United States v. Edwards*, 696 F.2d 1277, 1280 (11th Cir.), *cert. denied*, 461 U.S. 909, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983). In order for extrinsic act evidence to be admissible, it must be relevant to an issue other than the defendant's character and must possess probative value not substantially outweighed by undue prejudice. *United States v. Beechum*, 582 F.2d 898, 913 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). Whether the probative value of the evidence outweighs its prejudicial effect depends upon the circumstances of the extrinsic act. *Id.* at 914.

Here, evidence that Minyard had been involved in sales of cocaine was offered by the government to prove intent. Since defendant was charged with conspiracy to possess cocaine with intent to sell and possession of cocaine with intent to sell, evidence of cocaine sales by the defendant is relevant to intent. Minyard's plea of not guilty automatically placed intent in issue. *United States v. Nahoom*, 791 F.2d 841, 845 (11th Cir.1986). Evidence of extrinsic offenses is admissible to prove intent if its probative value is not outweighed by undue prejudice. *Beechum*, 582 F.2d at 910–913.

Fed.R.Evid. 403 requires the exclusion of unduly prejudicial evidence, despite its relevance, when the unfair prejudice outweighs the probative value of the evidence. With regard to this second step of the Rule 404(b) analysis, if the extrinsic and charged offenses are similar, and the amount of time separating them is not great, the probative value of the evidence is heightened. *United States v. Mitchell*, 666 F.2d 1385, 1390 (11th Cir.), *cert. denied*, 457 U.S. 1124, 102 S.Ct. 2943, 73 L.Ed.2d 1340 (1982). Here there is obvious great similarity between the extrinsic acts and the charged offenses and they are separated by little time at all. The sales of cocaine were made during the period the conspiracy was ongoing and during the time in which David Jones supplied Michael Minyard with cocaine. There was no abuse of discretion by the trial court in concluding that the probative value of the evidence outweighed its prejudicial effect. *See Edwards*, 696 F.2d at 1280 (evidence that defendant was involved in drug transactions not charged at trial relevant and admissible).

## CONCLUSION

The convictions and sentences of all defendants are, therefore, AFFIRMED.