**UNITED STATES of America,**

**v.**

**Felix NUÑEZ MOLINA and Ruben Ortiz De Jesus, Defendants.**

**Crim. No. 91–99 HL.**

United States District Court,
D. Puerto Rico.

Aug. 2, 1991.

Fernando Carlo, Luis F. Abreu Elias, Hato Rey, P.R., for U.S.

Luis F. Padilla, Hato Rey, P.R., for defendants.

## ORDER

LAFFITTE, District Judge.

Before the Court are defendants Félix Núñez Molina ("Núñez") and Rubén Ortiz de Jesús' ("Ortiz") motions for acquittal or new trial, on the grounds that the evidence was not sufficient to support the convictions for aiding and abetting Ernesto Llanos Domenech ("Llanos") in distributing 563.3 grams of cocaine. The motions are further predicated on the Court's failure to make a *Petrozziello* ruling at the conclusion of all the evidence.

## A. SUFFICIENCY OF THE EVIDENCE

The legal standards applicable to such a claim are well settled. "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the government to support it." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). If "any rational trier of fact could have found the essential elements of the crime" the motion should be denied. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). "[The] test is whether the jury could reasonably have found the defendant guilty beyond a reasonable doubt, that is, is the evidence sufficient to sustain the conviction." *U.S. v. Pareja*, 876 F.2d 1567, 1568 (1st Cir.1989).

### 1. The Claims of Defendant Núñez

■ Núñez says that the evidence was not sufficient to support his conviction for aiding and abetting Llanos, who pled guilty before trial, in distributing cocaine. The evidence shows, however, that Llanos had conversations via telephone or beeper with an undercover DEA agent, Izquierdo, for the sale of a half kilo of cocaine for $10,-000. Llanos explained that he had to "contact his man." True to his word, Llanos contacted his supplier, and subsequently arranged a place and time to meet the undercover agent. The rendezvous was to take place at the Kentucky Fried Chicken Restaurant in Carolina. Both Llanos' residence and the meeting place were placed under surveillance. The agents observed Llanos as he exited his residence. Llanos then attempted to use various public phones, and subsequently saw Núñez' car and flagged him down. Núñez then followed Llanos to Llanos' residence, and then rode with Llanos to the Kentucky Fried Chicken Restaurant parking lot where the drug transaction was arranged to take place.

At the parking lot of the restaurant, DEA agent Izquierdo exited his car and walked over towards Llanos' vehicle. With defendant Núñez sitting in the front passenger seat of Llanos' car, Llanos explained to the agent that they, Llanos and Núñez, had to return to Llanos' residence to cut the cocaine, because they were carrying a kilo and the sale was only for half kilo. While the agent, who was wired, was carrying on the conversation with Llanos, across Núñez, the latter remained silent. Thereafter, Llanos and Núñez returned to defendant Llanos' residence.

Shortly thereafter, Llanos arrived again at the Kentucky Fried Chicken Restaurant premises with Núñez' brother-in-law, defendant Ortiz de Jesús, riding in the front passenger seat. Agent Izquierdo again approached Llanos' vehicle where he saw Llanos pick up a plastic shopping bag being carried between Llanos and Ortiz. Llanos removed the cocaine from the bag, placed it on his lap and proceeded to discuss payment once again in the presence of Ortiz, who was sitting at all times in the front passenger seat, witnessing the transaction. The undercover agent was handed over a sample of the cocaine for his inspection. The agent walked to the trunk of his vehicle purportedly to get the $10,000 for payment, but instead gave the arrest signal. Whereupon Llanos and Ortiz were arrested. The cocaine was still in their vehicle. When arrested, Ortiz was wearing a beeper, although he was unemployed. At the laboratory the substance yielded positive to cocaine.

This evidence is, in the Court's view, sufficient to sustain a conviction. There was evidence that Llanos, upon discussing the sale with the agent, stated that he had to "contact his man," meaning of course his supplier; that he flagged down Núñez who followed him to Llanos' home; that Núñez departed with Llanos from his house in the same automobile, carrying a kilo of cocaine to the Kentucky Fried Chicken parking lot to rendezvous with the undercover agent for the purpose of consummating a drug transaction; that Llanos, in the presence of Núñez, discussed the price and agreed to go back to his residence to cut the kilo of cocaine they were carrying. This evidence was undisputed and the jury was well within its realm in accepting this evidence as proof of defendant Núñez' guilt for aiding and abetting a drug transaction, beyond a reasonable doubt.

### 2. *The Claims of defendant Ortiz*

As to defendant Ortiz, the evidence is likewise sufficient to support a finding of guilty. Ortiz was present for the second rendezvous, previously arranged by Llanos and Núñez. He was sitting in the front passenger seat. He saw and heard Llanos, sitting in the driver's seat, remove the cocaine, and discuss the price with the undercover agent. He witnessed Llanos give a sample to the agent, who was to walk to his car for the $10,000 to pay for the half kilo. Consequently, the Court cannot say that a reasonable juror could not find that Ortiz was present to offer security, protection, and counter-surveillance to Llanos in the transaction. The fact that Núñez and Ortiz were brothers-in-law, coupled with the fact that when Núñez returned to Llanos' home to cut the cocaine in half, it was Ortiz, rather than Núñez who came along, *wearing a "beeper"* while unemployed,[1] is

sufficient for a reasonable juror to conclude that Ortiz' switching of roles with Núñez, to provide security while the drug deal was consummated, was an act by Ortiz "which contributed to and furthered the offense with the interest of the defendant to aid in the commission of the substantive offense." *U.S. v. Pareja*, 876 F.2d at 1568. The jury was reasonable in inferring the commission of the crime beyond a reasonable doubt based on the evidence as a whole.

In sum, (1) the timing of the presence of Ortiz in Llanos' car—right after Núñez and Llanos had agreed to return to the Kentucky Fried Chicken parking lot with half a kilo,—(2) the fact that Ortiz and Núñez were related by marriage,—supporting the inference that they knew and trusted each other,—(3) the plain view of the cocaine— Ortiz was riding in the *front seat* and saw the cocaine and watched the transaction,— (4) the fact that Ortiz was unemployed and was carrying a "beeper," provide the surrounding circumstances where the jury could find that (i) Ortiz associated himself with the criminal venture of distributing cocaine, (ii) wished to bring it about by providing security, and (iii) thereby sought, by his action of providing security and wearing a beeper while riding in the front seat, to make the crime succeed. *U.S. v. Glover*, 814 F.2d 15 (1st Cir.1987). Consequently, in line with the foregoing, the Court holds that the evidence is sufficient to sustain the jury's verdict.[2]

### B. THE PETROZZIELLO NON–RULING

Defendants claim that because the Court failed to make a *Petrozziello* ruling at the conclusion of all the evidence, the verdict should be set aside. The record is indubious that defendant Núñez filed a robing room motion for a hearing prior to trial to determine the existence of a con-

---

**1.** The jury could have reasoned that "beepers" are used by drug dealers to arrange and facilitate drug transactions. *See, U.S. v. Rivera*, 872 F.2d 507, 519 (1st Cir.1989); *U.S. v. Ginsberg*, 758 F.2d 823 (2nd Cir.1985). It goes without saying that carrying a "beeper," without more, is no evidence of guilt. But in this case, Ortiz' "beeper" was certainly a handy device in com-

plementing the protection and security he was affording to the drug transaction.

**2.** Ortiz' knowledge of the presence of the cocaine and his presence to provide security at the agreed upon rendezvous at a parking place at night, distinguishes this case from *U.S. v. Clotida*, 892 F.2d 1098 (1st Cir.1989), and makes it closer to *U.S. v. Glover*, 814 F.2d 15.

**502**

spiracy, whether defendant was a member thereof, and whether any codefendant's statements implicating him were made in furtherance and in the course of the conspiracy. The Court denied the motion. *See U.S. v. Medina,* 761 F.2d 12 (1st Cir. 1985); *U.S. v. Monaco,* 700 F.2d 577 (10th Cir.1983). On the first day of trial defendant renewed his motion and codefendant Ortiz joined the motion. At that time the Court advised the parties that it would make a ruling on defendants' request at the end of the presentation of all the evidence. However, when both sides rested the motion was not renewed or brought to the Court's attention.

The failure to make a formal *Petrozziello* finding has been addressed at least three times by the First Circuit, in *U.S. v. Ciampaglia,* 628 F.2d 632 (1st Cir.1980), *U.S. v. Machor,* 879 F.2d 945 (1st Cir.1989), and *U.S. v. Perkins,* 926 F.2d 1271 (1st Cir. 1991). From this trilogy the rule has emerged that defendant's failure to object to the omission of a *Petrozziello–Ciampaglia* ruling after the *conclusion of all the evidence,* bars the defendant from raising the point on appeal, and accordingly is no basis to set aside a conviction. Furthermore, in this case the Court, in charging the jury, explicitly instructed the jury to deal with each defendant individually. *U.S. v. Perkins,* 926 F.2d at 1281.

Lastly, the evidence that strongly implicated defendants Núñez and Ortiz came via direct testimony of the agents. Consequently, the Court finds that there is sufficient evidence to sustain the verdict.

WHEREFORE, defendants' motion for judgment of acquittal or for a new trial is hereby DENIED.

IT IS SO ORDERED.